BARBARA L. JOHNSON v. KENNETH A. PODGER

No. 7814SC1117

(Filed 18 September 1979)

**Limitation of Actions § 4.2; Physicians, Surgeons and Allied Professions § 13—
medical malpractice—injury not readily apparent—accrual of cause of action**

Under former G.S. 1-15(b), plaintiff's claim based upon defendant physi-
cian's alleged negligent causation, misdiagnosis and treatment of an infection
during surgery and post-operative care accrued at the time her injury was
discovered or should reasonably have been discovered by her, and the three-
year limitation of G.S. 1-52(5) began to run on such date, since her injury was
not readily apparent at the time of its origin.

APPEAL by plaintiff from *Wood, Judge.* Judgment entered 22
August 1978 in Superior Court, DURHAM County. Heard in the
Court of Appeals 30 August 1979.

The trial judge entered summary judgment for defendant on
the grounds that plaintiff's action is barred by the three-year
statute of limitations found in G.S. 1-52(5). Plaintiff's medical
malpractice action is for damages due to the causation, negligent
treatment and misdiagnosis of an infection. The pleadings, af-
fidavits and depositions considered in a light most favorable to
plaintiff reveal the following.

On 30 March 1970, plaintiff was admitted to Watts Hospital
for surgery under the care of defendant, who specializes in
gynecology. Defendant performed an abdominal hysterectomy and
removed plaintiff's cervix and uterus. The surgical incision
became infected and defendant treated the infection. Plaintiff was
released from the hospital under defendant's care on 7 April 1970.
At that time, she was experiencing a vaginal discharge which
defendant described as a routine consequence of the surgery
which would disappear in three to four weeks. Defendant saw
plaintiff for follow-up office examinations on 13 April and 20 April
1970.

On 27 April 1970, plaintiff developed rectal problems
unrelated to the hysterectomy which were treated by Dr. John M.
Cheek, a general surgeon. He performed surgery on 9 May 1970.
Plaintiff continued to have a foul, heavy vaginal discharge, ab-
dominal pains and a low-grade fever. Because of this, Dr. Cheek

requested defendant examine plaintiff. Defendant found plaintiff to be well healed. Dr. Cheek gave plaintiff a follow-up examination on 19 May and, again because of plaintiff's pain, fever and discharge, insisted defendant reexamine plaintiff.

Defendant saw plaintiff the next day and performed a pelvic examination. He confirmed the discharge but made no culture and diagnosed it as "trichomonas," a bacterial infection. He prescribed a drug specifically designed to treat this type of infection. Defendant saw plaintiff again on 3 June 1970. He told her she was completely healed. When she complained about the pain, he lost patience with her and told her it was in her mind, that he would no longer see her and that any future complaints should be directed to her regular medical doctor.

Through June and July her pain, fever and discharge worsened. She made an appointment with Dr. Cheek on 6 August 1970. Dr. Cheek made a rectal examination and found no problems. He advised plaintiff to see defendant. She related her experience of 3 June with defendant. Dr. Cheek then advised her to see another gynecologist. She then requested that he treat her and he consented. An appointment was made for 13 August. On that date, Dr. Cheek performed a pelvic examination. For the first time, plaintiff was informed that the fever, vaginal discharge and pain were the result of an infection for which he prescribed an antibiotic. He saw her a week later and noted improvement.

Plaintiff's rectal problems occurred in late August. Surgery for this problem was performed on 8 September 1970. At a follow-up examination on 15 September 1970, Dr. Cheek noticed the vaginal discharge and again advised plaintiff to seek the care of a gynecologist.

Plaintiff arranged an appointment for 24 September 1970 with Dr. Clifford C. Byrum, a gynecologist. Dr. Byrum examined plaintiff and informed her she had not healed from defendant's surgery of 1 April and that she was suffering from a "staph" infection. Dr. Byrum refused to treat her, on ethical grounds, considering her still a patient in defendant's and Dr. Cheek's postoperative care. Dr. Byrum did call Dr. Cheek and advised him of his findings. Beginning 28 September 1970, Dr. Cheek attempted unsuccessfully to treat the "staph" infection. The infection was so extensive that complete surgical removal was impossible. The in-

fection and its consequences persisted, and Dr. Cheek turned the case over to a gynecologist and a general surgeon at Duke University Hospital. These physicians operated on plaintiff on 4 December 1970 and supervised a course of treatment that involved weekly anti-staphylococcal injections which continued through 28 February 1973.

Plaintiff instituted this action on 10 September 1973 by issuance of a summons upon application and order extending time for filing a complaint until 30 September 1973. The complaint was filed on 28 September 1973.

*Grover C. McCain, Jr., and Murdock and Jarvis, by Jerry L. Jarvis, for plaintiff appellant.*

*Smith, Anderson, Blount, Dorsett, Mitchell and Jernigan, by James D. Blount, Jr., and Nigle B. Barrow, Jr., for defendant appellee.*

VAUGHN, Judge.

The sole question on appeal is whether plaintiff's claim is barred by the statute of limitations. Defendant and the trial court below were of the opinion that G.S. 1-52(5) barred plaintiff's claim. Plaintiff felt G.S. 1-15(b) permitted her claim.

As adopted for purposes of this action, G.S. 1-52(5) provided that an action must be within three years "for any other injury to the person or rights of another, not arising on contract and not hereafter enumerated." This statute has been applied to medical malpractice actions. *See, e.g., Shearin v. Lloyd,* 246 N.C. 363, 98 S.E. 2d 508 (1957). In applying G.S. 1-52(5), a three-year period of limitations on actions is established. This does not, however, answer the question of when this three-year period begins to run. The time of accrual of this three-year period for plaintiff's cause of action is the central issue of this case.

In 1971, the General Assembly amended G.S. 1-15. The amendment created G.S. 1-15(b) which provided:

"Except where otherwise provided by statute, a cause of action, other than one for wrongful death, having as an essential element bodily injury to the person or a defect in or damage to property which originated under circumstances

making the injury, defect or damages not readily apparent to the claimant at the time of its origin, is deemed to have accrued at the time the injury was discovered by the claimant, or ought reasonably to have been discovered by him, whichever event first occurs; provided that in such cases the period shall not exceed 10 years from the last act of the defendant giving rise to the claims for relief."

Prior to the enactment of this statute, the rule in this State which was contrary to the majority rule was that the cause of action accrued when the negligent act was done and not when the damages resulted. *Jewell v. Price*, 264 N.C. 459, 142 S.E. 2d 1 (1965); *Shearin v. Lloyd, supra; Blount v. Parker*, 78 N.C. 128 (1878). This harsh rule of law was changed by G.S. 1-15(b). *Raftery v. Vick Construction Co.*, 291 N.C. 180, 230 S.E. 2d 405 (1976). If (1) an essential element of a claim is nonapparent bodily injury or damage to property and (2) no statute otherwise provides, the period of limitation may run from the discovery of the injury but in no event for more than ten years from the last act or omission of the defendant. By this statute, the Legislature adopted a discovery rule for the accrual of actions if these two requirements are met. *See* Lauerman, *The Accrual and Limitation of Causes of Actions for Nonapparent Bodily Harm and Physical Defects in Property in North Carolina*, 8 Wake Forest L. Rev. 327 (1972).

We note that in 1975, G.S. 1-15(b) was amended to exempt from its coverage a cause of action "for malpractice arising out of the performance of or failure to perform professional services," along with the already exempted wrongful death. The Legislature, at the same time, created G.S. 1-15(c), a special statute for accrual and limitation of actions for professional malpractice. This indicates malpractice actions were included in G.S. 1-15(b) before G.S. 1-15(c) was adopted. In terms of the period of limitations, G.S. 1-15(c) does differentiate between cases involving a "foreign object, which has no therapeutic or diagnostic purpose or effect," and any other case of "bodily injury to the person . . . which originates under circumstances making the injury . . . not readily apparent to the claimant at the time of its origin, and . . . is discovered . . . two or more years after the occurrence of the last act of the defendant giving rise to the cause of action." For the latter, the maximum time in which a cause of action can be brought is not more than "four years from the last act of

defendant giving rise to the cause of action" and in the former case "10 years from the last act of defendant giving rise to the cause of action." Negligent treatment or misdiagnosis would both come under the four-year outside limit. But for both foreign object injury and other cases of nonapparent injury, as in this case, accrual time based on discovery by plaintiff is provided. Unless the injury is nonapparent or involves a foreign object in the body, the action accrues on the occurrence of the last act of the defendant. Before the enactment of G.S. 1-15(c), any claim for nonapparent bodily injury however arising was governed by G.S. 1-15(b) as to the time of accrual of a cause of action. The 1979 General Assembly repealed G.S. 1-15(b) altogether. 1979 N.C. Sess. Laws c. 654, s. 3(a). The repealing session law does not affect G.S. 1-15(c) but adds a new discovery statute for all other cases for personal injury or damages to property. 1979 N.C. Sess. Laws c. 654, s. 3(b). For purposes of this appeal, G.S. 1-15(b), as set out above, provides the wording of the statute to be interpreted.

In a malpractice action for G.S. 1-15(b) to apply, we must have "a cause of action . . . having as an essential element bodily injury to the person . . . which originated under circumstances making the injury . . . not readily apparent to the claimant at the time of its origin. . . ." Plaintiff's cause of action has as an essential element bodily injury as the result of defendant's actions in negligent causation, misdiagnosis and treatment of a "staph" infection. Her evidence shows the injury originated in the surgery and post-operative care of defendant. It was not readily apparent to plaintiff at the time it occurred. While the manifestations of the injury — fever, vaginal discharge and pain — were known to plaintiff, the cause was not discovered until either 13 August or 24 September. On 13 August, plaintiff discovered she had an infection. On 24 September, the infection was diagnosed as a "staph" infection related to defendant's surgery. The injury was not readily apparent at the time of its origin; it was a latent undiscovered injury.

The three-year limitations statute for personal injury is not one to which the "[e]xcept where otherwise provided by statute" clause of G.S. 1-15(b) would apply. This exception is for other statutes that provide a time of accrual or an overall limitation period different from that provided in this statute. Examples are G.S. 1-52(9) which provides an action for fraud or mistake does not

accrue until discovery and must be brought within three years and G.S. 1-50(5) which provides that an action against an improver of real property brought by parties not in actual control or possession shall accrue on "the performance or furnishing of such services and construction" and must be brought not more than six years from the performance or furnishing. Unlike these statutes, G.S. 1-52(5) says nothing about the accrual of an action, which is the primary issue of this case. This answer is provided by G.S. 1-15(b). The statute provides the time of accrual to be on discovery and the maximum period of limitation to be ten years from the last act of the defendant. The three-year limitation of G.S. 1-52(5) is applicable to the case but does not begin to run until discovery and in no event could it have been brought more than ten years after the last act of defendant.

Applying the statute, plaintiff's claim accrues from the time the injury was discovered or should reasonably have been discovered by her. If defendant negligently caused, misdiagnosed or failed to treat the infection, defendant had an immediate claim for relief grounded on this malpractice. If the injury was not readily apparent to plaintiff when she was treated, G.S. 1-15(b) provides that plaintiff's claim, instead of accruing at the time of misdiagnosis or improper treatment, accrues when the injury is discovered or ought reasonably to have been discovered by her. In no event can plaintiff have longer than ten years to sue from defendant's last act which would be his dismissal of plaintiff from his care on 3 June 1970. Plaintiff's suit comes well within this period. But plaintiff still must file within three years of *discovery* or within three years of the time she ought reasonably to have discovered the injury. Defendant may be able to establish that plaintiff ought reasonably to have discovered the injury at a time three years before this action was brought. That question, however, is unresolved. It was inappropriate to grant summary judgment in this case. Whether plaintiff ought to have discovered the injury three years before 10 September 1973, is an issue for the jury and not a matter of law for the court.

Our application of G.S. 1-15(b) to cases of malpractice in misdiagnosis and improper treatment is consistent with the Supreme's Court interpretation of the statute in *N.C. Ports Authority v. Fry Roofing Co.*, 294 N.C. 73, 240 S.E. 2d 345 (1978). This Court has held G.S. 1-15(b) did not extend the statute of

limitations in contract actions. 32 N.C. App. 400, 232 S.E. 2d 846 (1977). The Supreme Court, while concluding we reached the right result in the case, found our reasoning wrong on this point. "The statute, by its terms, applies to *any* cause of action (other than one for wrongful death, and except where otherwise provided by statute) if an 'essential element' thereof is a defect in property which defect originated under circumstances making it 'not readily apparent to the claimant' at the time of its origin." 294 N.C. at 85, 240 S.E. 2d at 352 (emphasis added). If the statute applies where there is a defect in property to determine the accrual of a contract action, we see no difference where there is personal injury to determine the accrual of a malpractice action where the injury is not readily apparent at the time of its origin.

On the allegations of this case taken in a light most favorable to the plaintiff as we must in summary judgment cases, we have negligence in both the misdiagnosis and the course of treatment. Where a harmful substance, though not necessarily foreign, is left in the body of a patient through negligence, an action based on failure to discover or remove such harmful substance should not run until the *later* in time of (1) termination of treatment or (2) the time the patient himself finally discovers and removes the substance. *Wilkinson v. Harrington*, 104 R.I. 224, 243 A. 2d 745 (1968). *Billings v. Sisters of Mercy*, 86 Idaho 485, 389 P. 2d 224 (1964); Annot. 80 A.L.R. 2d 368, 387-96 (1961); 61 Am. Jur. 2d Physicians § 185; 54 C.J.S. Limitation of Actions § 174(b). Defendant would have us run the period of limitations from the *earlier* time, the termination of treatment on 3 June 1970. We rely on the express words of the Legislature and the Supreme Court's interpretation of those words in the *N.C. Ports Authority* case to run the period of limitations from the time of discovery or the time plaintiff should have discovered the injury. We are aware of the opinion of this Court in *Ballenger v. Crowell*, 38 N.C. App. 50, 247 S.E. 2d 287 (1978). We have, nevertheless, taken the facts of this case and applied the law in accord with what we believe the Legislature has expressly provided.

Finally, we note the conflict of other jurisdictions in applying the discovery rule to cases of misdiagnosis and negligent treatment. *See, e.g., Robinson v. Weaver*, 550 S.W. 2d 18 (Tex. 1977) (discovery rule not applied); *Frohs v. Greene*, 253 Or. 1, 452 P. 2d 564 (1969) (discovery rule applied); *see also Wyler v. Tripi*, 25

Ohio St. 2d 164, 267 N.E. 2d 419 (1971) and cases cited therein at 169-70, 267 N.E. 2d at 422. Our Legislature, however, in G.S. 1-15(b), provided a discovery rule for any action except wrongful death.

It was error to grant summary judgment for defendant on the ground that the statute of limitations had run.

Reversed.

Judges HEDRICK and ARNOLD concur.