SHARON BENSON BLACK v. T. W. LITTLEJOHN, SR., M.D.

No. 8321SC181

(Filed 20 March 1984)

**Physicians, Surgeons, and Allied Professions § 13— medical malpractice—statute of limitations—latent injuries**

The purpose of the exception in G.S. 1-15(c) allowing a four-year limitation period in certain medical malpractice cases is to provide for latent injuries where the physical damage to a plaintiff is not readily apparent and not for those cases in which the injury is obvious but the alleged negligence of the doctor is not. Therefore, the three-year limitation period of G.S. 1-15(c) applied to plaintiff's medical malpractice action based on defendant's alleged negligence in performing unnecessary surgery on plaintiff, although plaintiff allegedly did not discover until more than two years after the surgery that defendant had negligently failed to advise her of the availability of alternative treatments, since the physical damage to plaintiff was readily apparent at the time of surgery.

Judge JOHNSON dissenting.

APPEAL by plaintiff from *Beaty, Judge.* Order entered 26 October 1982 in Superior Court, FORSYTH County. Heard in the Court of Appeals 18 January 1984.

On 16 August 1982, plaintiff instituted this action for medical malpractice against defendant alleging that he performed unnecessary surgery on her. Defendant operated on plaintiff on 1 October 1978 at which time he removed plaintiff's ovaries and other reproductive organs. Subsequently, and perhaps as early as 17 August 1981, plaintiff contends that she began to suspect that her medical condition could have been treated without surgery,

and that defendant had negligently failed to advise her of alternative, less drastic treatments.

Defendant filed a responsive pleading which contained a motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure on the ground that the action was barred by the three-year statute of limitations contained in G.S. 1-15(c). By order entered 26 October 1982, the trial court allowed defendant's motion to dismiss. Plaintiff appealed.

*Badgett, Calaway, Phillips, Davis, Stephens, Peed and Brown, by Herman L. Stephens, for plaintiff appellant.*

*Petree, Stockton, Robinson, Vaughn, Glaze and Maready, by J. Robert Elster and Michael L. Robinson, for defendant appellee.*

WEBB, Judge.

Defendant's motion to dismiss the complaint was properly allowed under G.S. 1A-1, Rule 12(b)(6) if the complaint has pled a fact that will necessarily defeat its claim. *See Powell v. County of Haywood,* 15 N.C. App. 109, 189 S.E. 2d 785 (1972). Defendant argues that the complaint shows on its face that plaintiff's cause of action accrued more than three years prior to the institution of this action and is thus barred by G.S. 1-15(c). That statute provides as follows, in pertinent part:

> "(c) Except where otherwise provided by statute, a cause of action for malpractice arising out of the performance of or failure to perform professional services shall be deemed to accrue at the time of the occurrence of the last act of the defendant giving rise to the cause of action: Provided that whenever there is bodily injury to the person, . . . which originates under circumstances making the injury, . . . not readily apparent to the claimant at the time of its origin, and the injury, . . . is discovered or should reasonably be discovered by the claimant two or more years after the occurrence of the last act of the defendant giving rise to the cause of action, suit must be commenced within one year from the date discovery is made: Provided nothing herein shall be construed to reduce the statute of limitation in any such case below three years. Provided further, that in no event shall an

action be commenced more than four years from the last act of the defendant giving rise to the cause of action. . . ."

G.S. 1-15(c).

This portion of G.S. 1-15(c) sets forth both a three-year and a four-year period of limitation. The four-year statutory period applies only to those cases in which the injury to the plaintiff is not, nor should have been, discovered within two years of accrual, that is, within two years of the defendant's last act giving rise to the cause of action. *See Flippin v. Jarrell,* 301 N.C. 108, 118-119, 270 S.E. 2d 482, 489 (1980). The last act of the defendant here was the surgery performed on 1 October 1978, thus plaintiff's cause of action accrued on that date. If the plaintiff suffered any injury it was what she contends is the unnecessary surgery and the removal of her ovaries and other reproductive organs.

Plaintiff contends that the four-year limitation period, rather than the three-year period, applies to her action because she did not discover her injury until more than two years after her surgery, in that she did not discover that defendant had negligently failed to advise her of the availability of alternative treatments for her condition until 17 August 1981. We disagree. Plaintiff was aware of the physical injury she had suffered, the removal of her reproductive organs, from the time of surgery. She was not aware until 17 August 1981 of what she contends is the defendant's negligence. The clear purpose of the exception in G.S. 1-15(c) allowing for a four-year limitation period in certain cases is to provide for latent injuries where the physical damage to a prospective plaintiff is not readily apparent, and not for those cases in which the injury is obvious but the alleged negligence of the doctor is not. We do not believe our legislature intended to equate the discovery of injury with the discovery of negligence.

Furthermore, plaintiff cannot reasonably maintain that her injury originated under circumstances making the injury not readily apparent at the time it occurred. At any point before or after her surgery, plaintiff through the use of reasonable diligence could have obtained a second medical opinion as to possible alternative treatments for her condition, and thus discovered the defendant's alleged negligence.

We do not believe *Ballenger v. Crowell,* 38 N.C. App. 50, 247 S.E. 2d 287 (1978) governs although there is some language in it favorable to the plaintiff. In that case the plaintiff contended that the defendant's treatment caused him to become addicted to narcotic drugs. The treatment did not stop until a time within the applicable statute of limitations. In this case the defendant's treatment of the plaintiff was complete more than three years before the action was commenced. We hold the trial court properly allowed defendant's motion to dismiss.

Affirmed.

Chief Judge VAUGHN concurs.

Judge JOHNSON dissents.

Judge JOHNSON dissenting.

The discovery proviso to G.S. 1-15(c) provides that whenever there is "bodily injury" to the person which originates under circumstances making "the injury" not readily apparent to the claimant at the time of its origin, and "the injury" is discovered or should reasonably be discovered two or more years after the occurrence of the last act of the defendant giving rise to the cause of action, suit must be commenced within one year from the date discovery is made. It is provided further that in no event shall an action be commenced more than four years from the aforesaid last act of the defendant. The issue presented by this appeal concerns the meaning of the phrase "the injury" as used in the nonapparent injury discovery proviso of G.S. 1-15(c). In my opinion, the majority errs in concluding that the legislature intended to equate the discovery of "the injury" with the discovery of "physical injury" and in addition errs by holding as a matter of law that plaintiff's injury did not originate under circumstances rendering it not readily apparent at the time it occurred because she failed to obtain a second medical opinion prior to consenting to undergo the surgery recommended by defendant.

I

As a preliminary matter, plaintiff's amended complaint makes it quite clear that this is an action for medical malpractice

grounded upon the defendant's breach of his duty to reasonably disclose the existence of less drastic available alternative treatments for plaintiff's condition prior to obtaining her consent for the removal of her reproductive organs. Plaintiff alleges that defendant negligently failed to exercise that degree of knowledge, skill and judgment in learning and informing plaintiff of available treatments for her condition which other specialists in his field ordinarily possess. Further, that had defendant known and informed her of the availability of less drastic alternative treatments, plaintiff would not have consented to the performance of the total abdominal hysterectomy done by the defendant on 1 October 1978.

Plaintiff's claim, therefore, is a common law action for malpractice or negligence, based upon the lack of informed consent for the surgical operation. *Nelson v. Patrick*, 58 N.C. App. 546, 293 S.E. 2d 829 (1982). The aim of the doctrine of informed consent is to encourage the physician to fully inform the patient so that the patient is equipped to intelligently participate in making decisions about his or her medical care and treatment. Adherence to a minimal standard of care ordinarily requires a physician or surgeon to secure the consent of an individual before providing treatment; consent to a proposed medical procedure is meaningless if given without adequate information. *McPherson v. Ellis*, 305 N.C. 266, 287 S.E. 2d 892 (1982). The duty to disclose arises in part from the physican's superior knowledge of medicine. The *lack* of informed consent therefore presupposes some omission or failure to disclose on the part of the physician, and the consequent ignorance or lack of knowledge caused thereby on the part of the patient. To maintain the action, the plaintiff must allege and prove that the omission was a proximate cause of the injury, that is, that had she been properly informed as to available less drastic alternative treatments, she would not have consented to undergo the total hysterectomy. *See McPherson v. Ellis, supra.*

Obviously, the plaintiff was aware that she had undergone a total abdominal hysterectomy at the time of the operation. What plaintiff alleges she was not aware of, was the fact that she could have and would indeed have chosen not to undergo surgery, but instead receive the drug therapies available for her condition. Significantly, it is not plaintiff's contention that defendant per-

formed the operation negligently, but that his negligent failure to disclose the available alternatives caused her to agree to proceed with the surgery. Had the plaintiff consented to the total abdominal hysterectomy with knowledge of the alternative treatment, she would not be able to maintain her cause of action. By definition, it would appear that a plaintiff seeking recovery under the doctrine of informed consent can only learn of the "injury" suffered because of the physician's preoperative negligent failure to inform, *after* having consented to and having undergone the procedure complained of. Although the bodily injury or damage suffered by plaintiff was, as she contends, the unnecessary surgical removal of her reproductive organs, at the time of the operation it was not apparent that plaintiff had been harmed by having the operation or that defendant had negligently failed to advise plaintiff of the availability of alternative treatments.

"Discovery" means to find out something *not previously known*; it always implies the previous existence of something *not known.* A patient will usually know when a particular treatment consented to has been performed within a short time thereafter; what an informed consent plaintiff will *not know* at that time is the fact of *undisclosed information,* and hence, that she had suffered an *injury.* By the majority's construction, the discovery proviso of G.S. 1-15(c), which was designed to apply to injuries not readily apparent at the time incurred, is made entirely unavailable for a cause of action whose significant feature from the point of view of the plaintiff, is the *lack of knowledge* concerning the treatment her physician proposes to perform. It would appear unlikely that the legislature intended such a result.

Furthermore, contrary to the logic of the cause of action for lack of informed consent, the majority holds that "plaintiff cannot reasonably maintain that her injury originated under circumstances making the injury not readily apparent at the time it occurred" because she failed to obtain a second medical opinion as to possible alternative treatments for her condition at some point prior to or after her surgery. This holding effectively places the benefit of the latent injury discovery proviso beyond the reach of those patients who are insufficiently suspicious of their doctor's competence or are financially unable to seek a second medical opinion prior to consenting to undergo an advised course of treatment and only belatedly learn of their doctor's negligent failure

to inform. Such a rule is clearly unwise as a matter of public policy for it penalizes the patient who has full confidence in his or her doctor and serves to promote an atmosphere of mutual suspicion and distrust between doctor and patient. It is also contrary to the widely recognized rule that while the physician-patient relationship continues the plaintiff is not ordinarily put on notice of the negligent conduct of the physician upon whose skill, judgment and advice she continues to rely. *See e.g. Hundley v. St. Francis Hospital,* 161 Cal. App. 2d 800, 327 P. 2d 131 (1958); *Jones v. Sugar,* 18 Md. App. 99, 305 A. 2d 219 (1973). Implicit in this rule is the recognition that absent actual notice of negligent medical care, the patient is entitled to place her full confidence in her physician and should not, therefore, be judicially penalized for doing just that.

II

Under G.S. 1-15(c), the definition of what constitutes "the injury" the claimant must have discovered is a question of law for the court; whether the plaintiff ought reasonably have discovered the injury before it was in fact discovered is a question of fact for the jury to decide. Three possible definitions of "injury" present themselves: (1) the allegedly negligent act or omission; (2) the physical damage resulting from the act or omission; or (3) the "legal injury," that is, all essential elements of the malpractice cause of action. *See Massey v. Litton,* 669 P. 2d 248 (Nev. 1983); Lauerman, *The Accrual and Limitation of Causes of Actions for Nonapparent Bodily Harm and Physical Defects in Property in North Carolina;* 8 Wake Forest L. Rev. 327 (1972). I am persuaded by the reasoning of the Nevada Supreme Court in *Massey v. Litton, supra,* that adoption of the first meaning would defeat the purpose of a discovery rule and the second test of physical damage is inadequate to protect the rights of the injured tort claimant in many factual situations. The lack of informed consent cause of action presents a perfect example of this problem.

Plaintiff's total hysterectomy was apparently performed without incident; she alleges no untoward operative or post-operative complications such as pain, disability or dysfunction which would have caused her to inquire further into her physical condition or seek a second medical opinion. In fact, her "injury," whether it be considered the lack of information or, as the majori-

ty would have it, the submission to unnecessary surgery, does not actually manifest itself in a physically objective and ascertainable manner in the traditional sense in which, for example, a negligently performed operation might — by the experience of abnormal pain or the contraction of infection. Such an "injury" manifests itself in the *knowledge or awareness* that it was not necessary to consent to surgery because another less drastic treatment was available. Until the plaintiff learned of the alternative treatment, her injury was not apparent to her. The loss of plaintiff's reproductive organs constitutes the consequential bodily injury or damage she suffered as a result of the alleged malpractice. The "physical injury" interpretation of the discovery rule adopted by the majority fails to account for all the relevant factors in precisely this type of case.

The underlying rationale for rejection of both the negligent act or omission and physical injury interpretations has been summarized as follows:

> [W]hen injuries are suffered that have been caused by an unknown act of negligence by an expert, the law ought not be construed to destroy a right of action before a person even becomes aware of the existence of that right. [Par.] Furthermore, to adopt a construction of § 78-14-4 that encourages a person who experiences an injury, dysfunction or ailment, and has no knowledge of its cause, to file a lawsuit against a health care provider to prevent a statute of limitations from running is not consistent with the unarguably sound proposition that unfounded claims should be strongly discouraged . . . It would also be imprudent to adopt a rule that might tempt some health care providers to fail to advise patients of mistakes that have been made and even to make efforts to suppress knowledge of such mistakes in the hope that the running of the statute of limitations would make a valid cause of action nonactionable.

*Foil v. Ballinger,* 601 P. 2d 144, 147-148 (Utah 1979). *Accord Massey v. Litton, supra.*

For limitations purposes, the term "injury" as used in the nonapparent injury discovery proviso should be interpreted to mean "legal injury," that is, the invasion of a legally protected interest of the claimant by the defendant. " 'Injury,' thus defined

denotes not only that the injured party has suffered a bodily injury . . . but that such harm was an invasion of his rights by the person against whom it is proposed to bring the action." Lauerman, *supra* at 354. *See also* Restatement (Second) of Torts, § 7 (1) (1965). Therefore, the one year period in which to bring suit would not start to run until the plaintiff had discovered or should reasonably have discovered both the fact of damage suffered and the realization that the cause was her physician's negligence. In this case, plaintiff's complaint alleges that her discovery of the fact that the hysterectomy was unnecessary because alternative treatments were available for her condition and plaintiff's realization that defendant had negligently failed to disclose the availability of those alternatives occurred on the same date — 17 August 1981. The legally protected interest invaded by defendant was plaintiff's right to be adequately informed about the treatments available for her condition prior to giving consent to the recommended surgery.

As a practical matter, this interpretation of the "injury" to be discovered is flexible enough to cover the relevant factors that go into the lack of informed consent cause of action and so avoids the shortcomings of the "physical damage" test adopted by the majority. Moreover, this construction is in accord with the majority view in construing statutory and common law discovery rules; a construction *already* adopted by this Court in *Ballenger v. Crowell*, 38 N.C. App. 50, 247 S.E. 2d 287 (1978). *See Massey v. Litton, supra; Foil v. Ballinger, supra; Hundley v. St. Francis Hospital, supra; Kilburn v. Pineda*, 137 Cal. App. 3d 1046, 187 Cal. Rptr. 548 (1982); *Lopez v. Swyer*, 62 N.J. 267, 300 A. 2d 563 (1973); *Jones v. Sugar, supra*.

In *Ballenger*, this Court considered when a cause of action for medical malpractice accrued under the common law and held the accrual date to be the earlier of (1) the termination of defendant's treatment of the plaintiff or (2) the time at which the plaintiff knew or should have known of his injury.[1] The plaintiff in *Ballenger* was seeking recovery for his doctor's allegedly

---

1. *But see Johnson v. Podger*, 43 N.C. App. 20, 257 S.E. 2d 684, *disc. rev. denied*, 298 N.C. 806, 261 S.E. 2d 920 (1979) (limitations period under G.S. 1-15(b) [now repealed] runs from the *time of discovery*, not from the earlier date of termination of treatment).

negligent treatment of plaintiff's hereditary nerve disorder, Charcot-Marie-Tooth disease. The defendant treated plaintiff with drugs and plaintiff became addicted to the medication by 1962; the doctor-patient relationship continued until 1974. The facts showed that the plaintiff had knowledge of his addiction in 1962 and the defendant argued that the cause of action accrued in 1962 and was therefore time barred because it was not filed until 1976.

This Court rejected the defendant's argument and adopted the "legal injury" construction of the discovery rule of *Jones v. Sugar, supra; Lopez v. Swyer, supra* and *Hundley v. St. Francis Hospital, supra.*

> The facts in this case clearly show that the plaintiff had knowledge of his addiction in 1962. However, "the limitations period starts to run when the patient discovers . . . the negligent act which caused his injury" . . . "[The] injury may be readily apparent but the fact of wrong may lay hidden until after the prescribed time has passed." . . . Here, the plaintiff, although aware of his addiction, contends that he was not aware that the treatment provided by the defendant was not necessary to relieve the pain of Charcot-Marie-Tooth disease. There is conflicting evidence relating to whether the plaintiff knew or should have known that the medication was not necessary prior to the termination of the doctor-patient relationship in 1974. This is a question for the jury to decide. (Citations omitted.)

38 N.C. App. at 60, 247 S.E. 2d at 294. The situation presented in *Ballenger* is analogous to that presented in the cause under discussion. Here, the plaintiff, although aware of the removal of her reproductive organs, contends that she was not aware that surgery was not the only possible treatment for her condition, and therefore that the operation was unnecessary until August of 1981. Accordingly, in the absence of facts which would have put plaintiff on inquiry notice of her possible cause of action at an earlier date, the one year period would begin to run from 17 August 1981. Whether plaintiff should reasonably have discovered that the operation was performed without her informed consent at an earlier date is properly a question for the jury to decide.

This construction of G.S. 1-15(c) is in accord with the majority view mentioned earlier. For example, in *Hundley v. St. Francis*

*Hospital, supra,* the plaintiff underwent abdominal surgery and during the operation her ovaries were removed without her prior consent. The doctor informed her that the operation was necessary due to ovarian cysts. The patient later discovered that her ovaries had been healthy and the surgery was not necessary. The court first held that while the physician-patient relation continues the plaintiff is not ordinarily put on notice of the negligent conduct of the physician upon whose skill, judgment and advice she continues to rely and that in the absence of actual discovery of the negligence, the statute does not start to run during the continued course of treatment. Further, that this is true even though the condition itself is known to the plaintiff so long as its negligent cause and its deleterious effect is not discovered. Next, the court held that the evidence presented was sufficient to support the finding that the action for malpractice accrued when the plaintiff acquired knowledge of the facts constituting her cause of action, that is, when she discovered that the defendant had unnecessarily removed her ovaries. *Accord Kilburn v. Pineda, supra* (limitations period for professional malpractice against the defendant doctor held to run from the date "a reasonable person in the plaintiff's position should have recognized there existed a basis for a malpractice action") and *Jones v. Sugar, supra* (discovery that the patient may have the basis for an actionable claim).

Similarly, in *Lopez v. Swyer, supra,* the patient and her husband commenced an action in 1967 against the defendant radiologist for medical malpractice with regard to radiation treatment administered in 1962 following a radical mastectomy for breast cancer. The plaintiff wife suffered from a severe adverse reaction to the radiation therapy for the next several years. Following a change of physicians in 1967, plaintiff overheard her examining physician state, "And there you see, gentlemen, what happens when the radiologist puts a patient on the table and goes out and has a cup of coffee." The plaintiffs sought to avail themselves of the "discovery rule" and thus avoid summary judgment in favor of defendant on the ground that the action was barred by the two year statute of limitations. The court observed that the discovery rule is essentially a rule of equity developed to mitigate the often harsh and unjust results which flow from a rigid and automatic adherence to a strict rule of law. "On the face of it, it seems inequitable that injured person, unaware that he has a cause of

action, should be denied his day in court solely because of his ig-
norance, if he is otherwise blameless." 300 A. 2d at 566. On the
basis of the facts presented, the court held that a material issue
of fact existed as to the date on which plaintiffs knew or might
reasonably have been expected to know the nature of the injuries
complained of and their relation to the alleged negligence of the
radiologist.

The Supreme Court of Nevada in *Massey v. Litton, supra,*
summarized the majority view of when the malpractice plaintiff
"discovers" his or her legal injury.

> The discovery may be either actual or presumptive, but must
> be of both the fact of damage suffered and the realization
> that the cause was the health care provider's negligence . . .
> This rule has been clarified to mean that the statute of
> limitations begins to run when the patient has before him
> facts which would put a reasonable person on inquiry notice
> of his possible cause of action, whether or not it has occurred
> to the particular patient to seek further medical advice . . .
> The focus is on the patient's knowledge of or access to facts
> rather than on her discovery of legal theories. (Citations
> omitted.)

669 P. 2d at 251-252. The *Massey* court then held that the
"injury" to be discovered is a "legal injury," encompassing
discovery of damage as well as negligent cause.

Accordingly, I would adopt the "legal injury" test for deter-
mining whether a claim was timely filed pursuant to G.S. 1-15(c)
and hold that a patient must file the action within one year from
the time when the patient discovers, or through the use of rea-
sonable diligence should have discovered, both the fact of damage
or injury suffered and facts leading to the realization that the
cause was or may have been her physician's negligence. In other
words, discovery — actual or presumptive — of all the essential ele-
ments of the malpractice cause of action. To hold otherwise would
unfairly deprive the injured patient of her claim before she had a
reasonable chance to assert it.

In conclusion, the plaintiff's complaint must be considered
timely filed under the four year limitation period of G.S. 1-15(c)
for the following reasons: plaintiff has alleged that she suffered

an injury which, under the circumstances, was not apparent at the time of the operation; she did not discover the fact that the operation had been unnecessary due to the defendant's allegedly negligent failure to reasonably inform her of available non-surgical treatments for her condition until more than two years after the operation was performed; this action was commenced within one year of the date of discovery of that injury; and the complaint has otherwise pled no fact that will necessarily defeat its claim. Therefore, I would reverse the trial court's dismissal of the complaint and allow plaintiff's action to proceed so that her claims may be decided upon their merits.