JUNIOUS THORPE, ADMINISTRATOR OF ESTATE OF SHIRLEY ANN THORPE, DECEASED, JUNIOUS THORPE, INDIVIDUALLY, AND MARY BUNCH THORPE v. RUSSELL W. DeMENT, JR., PHILIP O. REDWINE, SHERMAN A. YEARGAN, JR. AND GARLAND L. ASKEW, DOING BUSINESS AS DeMENT, REDWINE, YEARGAN AND ASKEW, ATTORNEYS AT LAW

No. 8310SC130

(Filed 3 July 1984)

**Attorneys at Law § 5.1; Limitation of Actions § 4.1— attorney malpractice action barred by statute of limitations**

    The trial court properly found that a legal malpractice action for damages against defendant attorneys-at-law for their alleged negligence in failing to present the plaintiffs' wrongful death claim to the personal representative of the tortfeasor's estate within the time specified in G.S. 28A-19-3 was barred by the statute of limitations provided by G.S. 1-15(c). Plaintiffs' loss of the right to recover from the general assets of the estate resulted from the original omission of the defendants in failing to make a timely presentment of the claim pursuant to G.S. 28A-19-3, and by virtue of the fact that defendant DeMent informed plaintiffs of his omission on or about 17 November 1977, the plaintiffs were at the very least put on inquiry notice of the possible cause of action for legal malpractice at that time.

    Judge PHILLIPS dissenting.

    APPEAL by plaintiffs from *Brewer, Judge.* Judgment entered 20 December 1982 in Superior Court, WAKE County. Heard in the Court of Appeals 12 January 1984.

    This is a legal malpractice action for damages against defendant attorneys-at-law for their alleged negligence in failing to present the plaintiffs' wrongful death claim to the personal representative of the tortfeasor's estate within the time specified in G.S. 28A-19-3. The action arises out of the defendant law firm's handling of a wrongful death action on plaintiffs' behalf. The plaintiffs' intestate, Shirley Ann Thorpe, was killed on 16 April 1976, in a collision between her vehicle and a motor vehicle operated by Robert Manson Wilson. Both Ms. Thorpe and Mr. Wilson died upon impact. On 30 April 1976, defendants, DeMent, Redwine, Yeargan & Askew, through Russell W. DeMent, Jr., undertook to represent plaintiffs for all purposes in connection with the death of Shirley Ann Thorpe. Junious Thorpe became the administrator of the estate of Shirley Ann Thorpe on 14 May 1976.

The administrator of Wilson's estate had given notice by publication to creditors of the estate on 30 April 1976. Other than a letter to Wilson's insurer, no notice of a claim for Thorpe's wrongful death was given to the Wilson estate until the filing of a complaint on 11 May 1977. In July 1977, Wilson's estate filed an answer asserting that the action was barred on the ground of non-notification of the claim under the provisions of G.S. 28A-19-3.

By mid-November, 1977, DeMent informed Thorpe that he had failed to give notice directly to the Wilson estate. At about the same time, through DeMent, the Thorpes received an offer to settle the case of *Thorpe v. Wilson* (Wake County No. 77CVS2053) in the amount of $27,500. The Thorpes considered and rejected the settlement offer. Shortly thereafter, Thorpe dismissed De-Ment as counsel and obtained a new counsel to represent the estate.

On 11 July 1978, the Wilson estate filed a motion for summary judgment on the ground that there was no genuine issue as to any material fact as shown by the pleadings, answers to interrogatories and admissions of fact, and that, therefore, defendants were entitled to judgment as a matter of law. The Superior Court ruled on the motion on 16 August 1979, granting summary judgment for defendants to the extent that coverage for the plaintiffs' claim was not provided by the decedent's liability insurance. In other words, the court ruled that at trial, plaintiffs' damages would be limited to the coverage provided in Wilson's liability insurance policy which was in force at the time of the collision.

The case of *Thorpe v. Wilson* (77CVS2053), was tried in Wake County Superior Court in May of 1981. The jury awarded plaintiffs $85,000 and judgment was accordingly entered in favor of plaintiffs in that amount. The insurance proceeds applicable to plaintiffs' claim amounted to $50,000. Upon appeal by both parties, this Court affirmed the trial court's ruling on plaintiffs' ability to recover damages only to the extent of the insurance coverage. *Thorpe v. Wilson,* 58 N.C. App. 292, 293 S.E. 2d 675 (1982).

The present action, by the Thorpe estate against DeMent for his alleged negligence in failing to provide proper notice to the Wilson estate, was filed on 31 October 1979. By their complaint, plaintiffs sought recovery for the "loss or diminution of their

rights to recover on their claims for damages" against the Wilson estate, and for their inability to recover by settlement from the estate or its insurance carrier. In January, 1980, the defendants moved for summary judgment on the ground that the action was time-barred. Argument on that motion was postponed until after this Court's opinion in the wrongful death action, *Thorpe v. Wilson, supra,* was filed on 20 July 1982. Argument on the defendants' motion was heard on 10 November 1982. Plaintiffs were then seeking to recover damages in the amount of $35,000, the difference between the jury verdict in their favor and the available insurance proceeds to be applied thereto. On 20 December 1982, summary judgment for defendants was entered on the ground that the action was barred by the applicable statute of limitations, G.S. 1-15(c). Plaintiffs appealed.

*Boyce, Mitchell, Burns & Smith, P.A., by Greg L. Hinshaw, for plaintiff appellants.*

*Van Camp, Gill & Crumpler, P.A., by Douglas R. Gill, for defendant appellees.*

JOHNSON, Judge.

The sole question presented by this appeal is whether the record discloses that the plaintiffs' claim is barred by the running of the statute of limitations. If so, defendants were entitled to judgment as a matter of law, and summary judgment under G.S. 1A-1, Rule 56, was appropriate. *Brantley v. Dunstan,* 10 N.C. App. 706, 179 S.E. 2d 878 (1971).

The defendants argue that the malpractice action was not filed within three years of accrual of the cause of action and that plaintiffs may not proceed under the latent or non-apparent injury discovery proviso of G.S. 1-15(c) because plaintiffs either discovered or should have discovered the fact of loss within two years of the accrual of the cause of action. Both parties essentially agree that the date of the last act of the defendant giving rise to the cause of action for failing to give notice to the Wilson estate was 16 October 1976. This was the last date upon which notice of the wrongful death action could have been validly presented to the personal representative of the negligent tortfeasor's estate. *See* G.S. 28A-19-3; *Thorpe v. Wilson,* 58 N.C. App. 292, 293 S.E. 2d 675 (1982). The record reveals that on or about 17

November 1977, defendant DeMent informed plaintiffs that he had failed to give notice directly to the Wilson estate. At the same time, DeMent also informed plaintiffs that the Wilson estate had offered to settle the claim for $27,500. Plaintiffs rejected the settlement offer, obtained new counsel and proceeded to trial. On 16 August 1979, the order granting summary judgment in favor of the Wilson estate to the extent that coverage for the Thorpes' claim was not provided by the decedent's liability insurance was entered in the wrongful death action (*Thorpe v. Wilson*). On 31 October 1979, the present action for legal malpractice was filed, which was more than three years after 16 October 1976.

G.S. 1-15 provides, in pertinent part:

(c) Except where otherwise provided by statute, a cause of action for malpractice arising out of the performance of or failure to perform professional services shall be deemed to accrue at the time of the occurrence of the last act of the defendant giving rise to the cause of action: Provided that whenever there is bodily injury to the person, economic or monetary loss, or a defect in or damage to property which originates under circumstances making the injury, loss, defect or damage not readily apparent to the claimant at the time of its origin, and the injury, loss, defect or damage is discovered or should reasonably be discovered by the claimant two or more years after the occurrence of the last act of the defendant giving rise to the cause of action, suit must be commenced within one year from the date discovery is made: Provided nothing herein shall be construed to reduce the statute of limitation in any such case below three years. Provided further, that in no event shall an action be commenced more than four years from the last act of the defendant giving rise to the cause of action. . . .

For a plaintiff to avail himself of the one-year extension under the latent injury discovery rule, then, he must show that:

(1) the injury of economic loss originated under circumstances making the injury or loss not readily apparent at the time of its origin;

(2) the injury or loss was discovered or should reasonably have been discovered by the plaintiff two or more years after

the occurrence of the last act of the defendant giving rise to the cause of action;

(3) suit was commenced within one year from the date discovery was made; and

(4) the statute of limitations may not, in any case, have been reduced to below three years or extended beyond four years.

The last day on which a claim against the Wilson estate could have been made in order to prevent a bar against recovery from the general assets of that estate was 16 October 1976. That is the date on which the cause of action for the defendants' alleged malpractice accrued. G.S. 1-15(c); *Brantley v. Dunstan, supra.* Plaintiffs correctly contend that their injury or loss was not readily apparent at the time of its origin because they were entitled to rely on the defendants to make the required presentment to the Wilson estate within the time prescribed by statute.

The plaintiffs reposed their trust in the defendants to properly handle all of the claims arising out of their intestate's wrongful death on 16 April 1976. The contingency fee contract executed between plaintiffs and defendants on 30 April 1976 provided that defendant "Attorneys will devote their full professional abilities to case and clients agree to fully cooperate with the Attorneys." Part of the defendants' professional responsibilities included presentation of the plaintiffs' claim to the personal representative of the negligent tortfeasor, Robert Manson Wilson. The plaintiffs, who are laymen, became aware that their claim was not timely presented only when they were so advised by their attorneys, the defendants. Logically, defendants could only have advised plaintiffs of their omission *after* the close of the six month presentment period. Necessarily, then, the loss was "not readily apparent" to plaintiffs at the time of its origin. *See Black v. Littlejohn,* 67 N.C. App. 211, 214, 312 S.E. 2d 909, 912 (1984) (Johnson, J., dissenting) (action for medical malpractice; while physician-patient relationship continues, the plaintiff is not ordinarily put on notice of the negligence of the physician upon whose skill, judgment and advice she continues to rely).

However, we do not agree with plaintiffs' further related contentions (1) that they were not put on notice of their loss as a matter of law by reason of DeMent's informing them of his failure

to make a timely presentment of their claim; (2) that "in the course of legal proceedings, a claimant may not suffer a 'loss' unless and until a judge so declares"; and (3) that only with entry of the 16 August 1979 order barring their recovery from the general assets of the Wilson estate, did they discover an "economic or monetary loss" resulting from defendants' omission. In their brief, plaintiffs concede that prior to Judge Britt's ruling in the wrongful death action, they were "aware that defendants had erred in failing to follow the presentment statute; their negligence was spelled out in G.S. 28A-19-3." However, plaintiffs argue that they did not know that such conduct constituted actionable negligence "because they had not yet suffered a loss," and therefore that their damages were not then apparent. We reject this interpretation of the "loss" to be discovered under the proviso of G.S. 1-15(c).

The plaintiffs' argument depends upon the conclusion that their loss could not have occurred, and thus could not have been discovered, until their damages were made clear to them and that this happened only when the trial court ruled on the summary judgment in August, 1979. This conclusion confuses the *fact* of loss with the *extent* of that loss. The only question resolved by the trial court's ruling on 16 August 1979 concerned the *extent* to which plaintiffs' potential recovery in the wrongful death action would be barred by the defendant's omission.

It is well established that in a case such as this, "loss" or the invasion of a legally protected right of the plaintiff's, occurs when the negligence occurs. In *Shearin v. Lloyd*, 246 N.C. 363, 98 S.E. 2d 508 (1957), the Supreme Court held that ordinarily, a cause of action for negligent injury accrues when the wrong giving rise to the right to sue is committed, even though the damages at that time are nominal. Similarly, in *Jewell v. Price*, 264 N.C. 459, 142 S.E. 2d 1 (1965), a case involving recovery for the negligent performance of a building contract, the court stated the following rule:

Nominal damages may be recovered in actions based on negligence . . . The accrual of the cause of action must therefore be reckoned from the time the first injury, however slight, was sustained . . . It is unimportant that the actual or the substantial damage does not occur until later if the whole

injury results from the original tortious act . . . [P]roof of actual damage may extend to facts that occur and grow out of the injury, even up to the day of the verdict. If so, it is clear the *damage* is not the cause of action. (Citations omitted.)

*Id.* at 461-462, 142 S.E. 2d at 3. *See also Brantley v. Dunstan, supra,* and *Stereo Center v. Hodson,* 39 N.C. App. 591, 251 S.E. 2d 673 (1979).

In this case, the "whole injury" to plaintiffs, the loss of their right to recover from the general assets of the estate, resulted from the original omission of the defendants in failing to make a timely presentment of the claim pursuant to G.S. 28A-19-3. Plaintiffs' reliance upon *Sunbow Industries, Inc. v. London,* 58 N.C. App. 751, 294 S.E. 2d 409, *cert. denied,* 307 N.C. 272, 299 S.E. 2d 219 (1982), for the proposition that a claimant may not suffer a "loss" in the course of legal proceedings "unless and until a judge so declares," is both misplaced and erroneous. In *Sunbow* the plaintiff alleged that the defendant attorney had failed to file a financing statement or otherwise perfect a security interest in assets the plaintiff had sold to another corporation, D.B.E., Inc., on 27 May 1976. D.B.E. filed a voluntary petition in bankruptcy on 24 February 1978. On 25 September 1978 the bankruptcy court held that the plaintiff had not perfected its security interest and was subordinated as a creditor. The plaintiff then filed a malpractice action on 31 December 1979. The defendant moved pursuant to G.S. 1A-1, Rule 12(b) to dismiss the complaint on the ground that it was not filed within the applicable statute of limitations. This Court reversed the dismissal of the complaint on the ground that the complaint had been filed within three years of the accrual of the cause of action, reasoning that the defendant attorney had a continuing duty to file the financing statement after 27 May 1976, "so long as the filing . . . would protect some interest of his client." The court first observed that if the financing statement had been filed a sufficient time prior to the filing of the petition in bankruptcy on 24 February 1978, the plaintiff would not have lost its lien, and then concluded as follows:

It is on that date that the three-year statute of limitations began to run. The complaint does not allege a fact that will necessarily bar the plaintiff's claim and it was error to dismiss the action.

58 N.C. App. at 753, 294 S.E. 2d at 410. In *dictum* the court also reasoned that even if 27 May 1976 were considered to be the date of accrual, the plaintiff would not have been entitled to proceed under the proviso of G.S. 1-15(c) because his action was not timely even under that provision. Plaintiff had alleged that on 25 September 1978 the bankruptcy judge ruled that the security interest had not been perfected. The *Sunbow* court observed that, "He knew no later than that date of the alleged negligence and did not file this action until more than one year later." *Id.*

The dispositive issue in *Sunbow*, then, was not when the plaintiff discovered, or should have discovered, the loss, but rather, when the cause of action accrued for the defendant's negligent failure to file the financing statement. Here, the plaintiffs' rights could only be protected up to 16 October 1976 and they were directly informed of the fact of the alleged negligence on 17 November 1977, well within two years of the accrual of their cause of action. The "loss" that plaintiffs suffered thereby must be considered to be the *loss of their right to recover from the general assets of the Wilson estate.* By virtue of the fact that defendant DeMent informed plaintiffs of his omission on or about 17 November 1977, the plaintiffs were at the very least put on inquiry notice of their possible cause of action for legal malpractice. At that point in time, plaintiffs had before them the facts, or access to the facts, necessary for them to "discover" both their attorney's negligence and the consequent loss of their legal rights against the Wilson estate. In other words, plaintiffs had constructive knowledge of all of the essential elements of a complete malpractice cause of action. *See Black v. Littlejohn, supra* (Johnson, J., dissenting); *Ballenger v. Crowell,* 38 N.C. App. 50, 247 S.E. 2d 287 (1978) (medical malpractice; discovery of "injury" held to include both negligent act and the bodily injury or harm caused thereby). *See also Massey v. Litton,* 669 P. 2d 248 (Nev. 1983) (medical malpractice; "injury" to be discovered, either actually or presumptively, refers to "legal injury" which includes both the fact of damage suffered and the realization that the cause was the physician's negligence).

Accordingly, if as plaintiffs concede, the negligence of defendants was "spelled out in G.S. 28A-19-3," then as a matter of law plaintiffs are charged with the knowledge that a reasonable inquiry would have disclosed—that their claim against the estate

Thorpe v. DeMent

was barred by that allegedly negligent omission as of 17 November 1977. In other words, as a matter of law, plaintiffs should have discovered their loss on or shortly after 17 November 1977. As we stated earlier, this date was well within two years of the accrual of plaintiffs' cause of action. Therefore, plaintiffs may not proceed under the four year discovery proviso of G.S. 1-15(c). Inasmuch as the complaint was not filed within three years of the last act of the defendants giving rise to the cause of action, the action was time-barred under G.S. 1-15(c) and summary judgment was properly entered in favor of the defendants.

Affirmed.

Judge ARNOLD concurs.

Judge PHILLIPS dissents.

Judge PHILLIPS dissenting.

The majority holding that plaintiffs' loss and damage occurred when defendants failed to timely file notice of claim with the Wilson estate and that only the amount of damage was then uncertain is contrary to both reality and the law, in my opinion. Plaintiffs suffered no loss whatever at that time and thus had no cause of action for the statute to run against, since neglect alone does not constitute a cause of action. Even though plaintiff had lost by defendants' neglect the right to enforce the wrongful death claim against the general assets of the Wilson estate, that had not resulted in pecuniary loss at that time and there was no certainty that it would ever do so. This is because the value of the claim was uncertain and unknown, $50,000 worth of insurance was still available to pay it, and whether that amount would cover plaintiffs' damages or whether it would not and loss would thereby be sustained, no one knew. Thus, to say that plaintiffs' cause of action had nevertheless accrued because plaintiffs' loss had occurred and only the amount was uncertain is a self-evident sophistry. Plaintiffs then had no cause of action. What plaintiffs then had, and all that they had, as both plaintiffs and defendants then knew, was a potential cause of action. If the value of the wrongful death claim turned out to be no more than $50,000, they knew that plaintiffs' potential cause of action would remain in-

complete, since the amount was collectable from the insurance; but if the claim's value exceeded $50,000, they knew that plaintiffs' potential cause of action would become a complete one for the excess. And it was not until May, 1981, a year and a half after this case was filed, that the value of the wrongful death claim was determined to be $85,000 and plaintiffs' cause of action against defendants for $35,000 became complete. That the value ultimately set by the jury exceeded $50,000 does not obviate the fact, however, that until then plaintiffs had no actual cause of action against defendants. Because, if the jury had established that the claim was worth only $50,000, or some lesser amount collectable from the available insurance, as it well could have done, nothing is clearer than that plaintiffs' supposed cause of action against defendants would have vanished into nothingness, notwithstanding the theorizing to the contrary about nominal damages. A defeasible interest in property the law authorizes; but causes of action that supposedly exist one day and are non-existent the next are an anomaly that the law has not yet recognized or dealt with, so far as my research reveals.

The judicial fiction that damage and loss occur and causes of action therefore accrue when negligence happens rather than when injury really occurs or is learned about leads to many anomalous and even pernicious results and it would be a great service to the law of this state if the Supreme Court abandoned it and returned to the sound principle that negligence causes of action accrue when the injury that is sued for occurs. That this fiction is a blemish on our jurisprudence that ought to be removed requires only a reading of the cases. In many cases since this wrong turn was made, including *Jewell v. Price*, 264 N.C. 459, 142 S.E. 2d 1 (1965) and *Shearin v. Lloyd*, 246 N.C. 363, 98 S.E. 2d 508 (1957), followed by the majority, the salutary principle, universally approved, that wrongdoers are not to profit by their own wrongs, was ignored and defendants were given the benefit of statutes of limitation running against plaintiffs even though the defendants' negligence was secret, had caused no discernible injury, and the plaintiffs had absolutely no knowledge of it. And though it is universally conceded that the only legitimate purpose and function of statutes of limitations is to bar the enforcement of causes of action, once ripe, complete, and ready for adjudication, that have been permitted to wither and grow stale, yet the stat-

utes have been held to run against and even bar causes of action in this state before the injury sued for even occurred. *State v. Cessna Aircraft Corp.*, 9 N.C. App. 557, 176 S.E. 2d 796 (1970). Which was inevitable, of course, and could have been anticipated when the Court first left the solid trunk of the law, which is that causes of action for negligence do not accrue until some real injury results therefrom, and started down the flimsy and fallacious limb of imaginary and theoretical injury. Nevertheless, what lawyer, or layman either, for that matter, can digest the proposition that the statute of limitations began to run against the State's cause of action for *Cessna's* airplane crashing into its building, not when the crash occurred, but four years earlier when Cessna sold the defective airplane to a stranger to the lawsuit? If any of the great satirists of Anglo-American jurisprudence, including Jonathan Swift and Charles Dickens, ever imagined anything as absurd and unjust, they apparently concluded it was too exaggerated to be either amusing or believable.

And though all lawyers and judges know that the true policy of the law is to discourage unnecessary and hasty litigation, the plain, unavoidable implication of this decision and those it follows is that people should sue upon a mere indication of wrongdoing and wait until later to ascertain if any real damages develop. This detrimental and indefensible policy should be repudiated. Public interest requires that people be able to know what they are about and why before they take their grievances to court or even have a right to. The orderly adjudication of real disputes is the court's business, not theorizing about imaginary disputes that are totally irrelevant to the practicalities of people deciding what to do about their legal rights and of lawyers advising them about them. For instance, if the *Jewell's* had learned that their furnace was defective before it blew up, they would not have sued the seller and no lawyer worth his salt would have advised them to; they would have asked the seller to make the minor, inexpensive adjustment that would have made the furnace safe. And the cause of action that they theoretically had for a small repair bill, which was never incurred because they did not know repairs were needed, had less than nothing to do with the actual cause that they later had for the destruction of their home. The public does not expect people to sue others and subject them to embarrassment, expense, inconvenience and strain when only a theoretical injury

has resulted; and if that is so, and I know perfectly well that it is, it is too plain for debate that statutes of limitation should not be running against their right to sue for real injuries that later occur.

Some blemishes in the law cannot be corrected or concealed by euphemisms, legal or otherwise; and will not be erased by either time or reiteration. That which is not so does not become so by repetition. Nor does the burden to correct this situation rest with the Legislature. Nothing in our statutes required the interpretation given to them by the Justices and the Justices should remove the interpolations made. Many other courts have done so.