RALPH D. BALLENGER v. LESTER A. CROWELL, JR.

No. 7727SC825

(Filed 19 September 1978)

1. **Physicians, Surgeons and Allied Professions § 14— malpractice—necessary proof**

In malpractice cases, plaintiff must demonstrate by the testimony of a qualified expert that the treatment administered by defendant was in negligent violation of the accepted standard of medical care in the community and that defendant's treatment proximately caused plaintiff's injury.

2. **Physicians, Surgeons and Allied Professions § 17— malpractice action—continued prescribing of addictive narcotic drugs**

In a malpractice action based on alleged negligence of defendant physician in causing and increasing plaintiff's addiction to narcotic drugs, the materials presented on motion for summary judgment raised genuine issues of material fact as to whether standard medical practice no longer regarded drug addiction as necessary in the treatment of plaintiff's disease and whether defendant knew or should have known that narcotics were not necessary to control plaintiff's pain.

3. **Physicians, Surgeons and Allied Professions § 17— malpractice action—addiction to prescribed drugs—contributory negligence—reliance on physician**

In a malpractice action based on alleged negligence of defendant physician in causing and increasing plaintiff's addiction to narcotic drugs, summary judgment was not properly entered for defendant on the ground that plaintiff was contributorily negligent as a matter of law in knowingly continuing his addiction to the drugs where plaintiff presented evidence that he relied upon defendant's advice that it would be necessary for him to continue taking the drugs for the rest of his life.

4. **Physicians, Surgeons and Allied Professions § 13— malpractice action—continued negligent treatment—statute of limitations**

The statute of limitations for "latent injury" cases, G.S. 1-15(b), did not apply to a malpractice action involving a course of continued negligent treatment. Nor did the statute of limitations for malpractice cases provided by G.S. 1-15(c) apply to such action where the action was pending when the statute was passed.

5. **Physicians, Surgeons and Allied Professions § 13— malpractice action—statute of limitations—continued course of treatment**

The continued course of treatment exception to the common law rule that an action accrues at the time of defendant's negligence applied in a malpractice action based on alleged negligence of defendant physician in continuing to prescribe addictive narcotic drugs for the plaintiff during the years 1962 to 1974. Therefore, plaintiff's cause of action accrued at the earlier of (1) the termination of defendant's treatment of the plaintiff or (2) the time at which plaintiff knew or should have known that the narcotic drugs were unnecessary to the treatment of his disease.

6. **Physicians, Surgeons and Allied Professions § 13— malpractice—continued prescribing of addictive drugs—accrual of cause of action—knowledge drugs unnecessary**

    In a malpractice action based on the alleged negligence of defendant physician in continuing to prescribe addictive narcotic drugs for plaintiff for twelve years, the evidence on motion for summary judgment presented a genuine issue of material fact as to when plaintiff knew or should have known that the narcotic drugs were not necessary to the treatment of his disease.

APPEAL by plaintiff from *Thornburg, Judge.* Judgment entered 27 May 1977, in Superior Court, LINCOLN County. Heard in the Court of Appeals 28 June 1978.

Plaintiff instituted a malpractice action in 1976 to recover damages from defendant-doctor alleging that he "negligently, improperly, intentionally, and in complete disregard for plaintiff's mental and physical well-being" caused plaintiff's addiction to narcotic drugs, and that he continued to maintain and increase his addiction for 12 years, from 1962 until 1974. Plaintiff was suffering from a chronic debilitative neurological disorder known as "Charcot-Marie-Tooth disease," and this disease was diagnosed by defendant in 1960. From 1960 until 1962, defendant treated plaintiff's pain with the addictive narcotic pantopon and, thereafter, prescribed or gave to plaintiff morphine sulphate and other addictive drugs. Plaintiff became addicted in 1962. Plaintiff continued under defendant's care and alleged that, by 1974, defendant was prescribing and he was ingesting approximately thirty-five one-half grain morphine sulphate tablets as well as twenty-five other prescription drug tablets and capsules each day to sustain his addiction. Plaintiff entered Appalachian Hall Hospital voluntarily in the fall of 1974 for treatment of his drug addiction and related physical and mental problems, leaving defendant's care before so doing.

Defendant in his answer pled the following defenses: that plaintiff had not stated a cause of action upon which relief could be granted pursuant to G.S. 1A-1, Rule 12(b)(6), that defendant was not negligent, that plaintiff was contributorily negligent, and that plaintiff's cause of action was barred by the statute of limitations. Defendant moved for summary judgment pursuant to G.S. 1A-1, Rule 56, on all the grounds pled in his answer.

At hearing on defendant's motion for summary judgment, depositions were presented which tended to show that plaintiff

knew he had become addicted to his pain medication in 1962, but believed it necessary to alleviate his pain. In 1967 or 1968, he voluntarily entered the Federal Narcotics Addiction Hospital in Lexington, Kentucky. At that time he was told that it would be dangerous to take him off the drugs. The defendant told him not to worry about the drugs and told him that he "would just always have to take them." Later, however, defendant recommended that the plaintiff enter a hospital to help him get off the drugs, but the defendant refused to assist the plaintiff in obtaining hospitalization. The defendant had slipped prescriptions for the drugs to the plaintiff at home and in the hospital. Defendant refused to file with Medicare, and failed to keep accurate records of the prescriptions. Defendant's nurses were not aware that he was prescribing the medication for plaintiff. Plaintiff stated in his deposition that the standard treatment for plaintiff's disease was surgery for a deformed joint, and although defendant had examined his feet regularly in the early years, in the last several years all he did was write prescriptions. In 1974, plaintiff consulted other physicians and entered Appalachian Hall. At that time he learned that he did not need narcotics for pain and successfully withdrew from the medication. Plaintiff, in his deposition, stated: "I have not taken any pain medication since the medication I received in Appalachian Hall [non-narcotic empirin]. I relied upon Dr. Crowell about the medication he prescribed for me — I thought he was the doctor and for a long time I thought he should know more about it than I did."

The deposition of plaintiff's wife tended to show that defendant told her that her husband needed the drugs he was addicted to, and that breaking the addiction was just too risky. A deposition of Dr. Griffin, plaintiff's present doctor, tended to show that plaintiff was heavily addicted when he saw plaintiff in 1974 in Appalachian Hall. The doctor learned either from plaintiff or his wife that plaintiff had been told by the doctor at Lexington that there was no need to withdraw from the drugs because he would have to go back on them for pain. Dr. Griffin testified that he had never heard of anyone breaking such a heavy addiction himself, and that Charcot-Marie-Tooth disease is a rare, progressive, neurological illness which is not always continuously painful and that treatment must be symptomatic. Although the illness itself could not be treated, the pain should be carefully controlled.

Plaintiff, once he withdrew from drugs, suffered only such pain as could easily be controlled by empirin, and treatment with narcotics was not necessary. Dr. Griffin testified that, while morphine in such doses as plaintiff was receiving might be appropriate in terminal cases, the dosage was not normal. He would not say that the dosage was in violation of approved medical standards. He did state that it was standard that, at some point, a doctor should intervene and either switch medication or break the addiction.

Defendant produced material which tended to show that the narcotics were necessarily prescribed to reduce plaintiff's pain and were necessarily increased. He advised breaking the addiction and tried to reduce dosage without success. He denied that he had not been filing for Medicare but admitted that the office records on plaintiff's morphine prescriptions were incomplete. He testified that he recommended that plaintiff institutionalize himself at least 10 to 12 times but that he, as treating physician, never made any effort to contact any institution.

The trial court found that there was no issue as to any material fact necessary to support a judgment and granted defendant's motion for summary judgment. From this order, plaintiff appeals.

*Bailey, Brackett & Brackett by Kermit D. McGinnis for plaintiff appellant.*

*Golding, Crews, Meekins, Gordon & Gray by John G. Golding and C. Bryon Holden for defendant appellee.*

CLARK, Judge.

A motion for summary judgment may be granted only when there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. *Lambert v. Duke Power Co.*, 32 N.C. App. 169, 231 S.E. 2d 31 (1977). All evidence before the court must be construed in the light most favorable to the non-moving party. The slightest doubt as to the facts entitles the non-moving party to a trial. *Miller v. Snipes*, 12 N.C. App. 342, 183 S.E. 2d 270, *cert. denied* 279 N.C. 619, 184 S.E. 2d 883 (1971). It is only in the exceptional negligence case that the rule should be invoked. *Robinson v. McMahan*, 11 N.C. App. 275, 181 S.E. 2d 147, *cert. denied* 279 N.C. 395, 183 S.E. 2d 243 (1971).

In the case *sub judice*, the court did not specify the grounds upon which the defendant's motion for summary judgment was granted. Therefore, every possible basis for the court's ruling must be examined in order to determine whether the motion was properly granted. We find that there are three potential grounds upon which the court's ruling could be supported, any one of which would entitle the defendant to summary judgment. First, that there was no issue of fact as to the negligence of the defendant; second, that there was no issue of fact as to the contributory negligence of the plaintiff; and third, that the statute of limitations barred plaintiff's action as a matter of law. We will consider these grounds in that order.

[1, 2] The court's grant of summary judgment could be upheld if it were clear as a matter of law that defendant was not negligent in continuing and increasing plaintiff's addiction. Negligence is, as noted earlier, rarely an issue appropriate for disposition by summary judgment. Where diverse inferences can be drawn the question of negligence is for the trier of fact. *Olan Mills, Inc. v. Terminal, Inc.*, 273 N.C. 519, 160 S.E. 2d 735 (1968). In malpractice cases, plaintiff's burden of proof at trial is heavy. He must demonstrate by the testimony of a qualified expert that the treatment administered by defendant was in negligent violation of the accepted standard of medical care in the community and that defendant's treatment proximately caused the injury. See 10 Strong's N.C. Index 3d, Physicians and Surgeons, § 15, *et seq.* In the case *sub judice*, Dr. Griffin did not state that defendant's treatment violated standard medical practice. But he did state that it was not normal and was not recommended. There was some evidence presented which tended to show that standard medical practice no longer considered addiction necessary and that defendant should have known more care was required than the mere writing of ever-increasing prescriptions. Although not a drug addiction case, *Sharpe v. Pugh*, 270 N.C. 598, 155 S.E. 2d 108 (1967), stated that a doctor could be held negligent for prescribing a dangerous drug as a remedy for ailments for which it was neither necessary nor suited if he violated accepted standards and knew actually or constructively that he was violating them. There was sufficient evidence presented at the hearing to raise the material issues of fact of whether standard practice no longer regarded addiction as necessary in the treatment of plaintiff's

disease, and whether defendant knew or should have known that narcotics were not necessary to control plaintiff's pain to overcome a motion for summary judgment on the grounds of no negligence as a matter of law.

[3] Like negligence, contributory negligence is rarely appropriate for summary judgment. There are no malpractice cases in North Carolina dealing with the issue of whether drug addiction is actionable when it is shown to be unnecessary even though the addiction was accepted by the patient. But several cases outside our jurisdiction have made it quite clear that a patient is to be permitted to rely on his doctor without becoming a culpable partner of what turns out to be his doctor's negligence. The fact that the patient becomes addicted, continues in the doctor's care and knowingly continues his addiction will not make him contributorily negligent unless he himself is doing something wrong or unless he knows his doctor is negligent. In the case *sub judice*, plaintiff believed that he had to be addicted for the rest of his life because defendant had told him so. That, once he became an addict, he began to behave like one, and wheedled prescriptions, is not surprising and does not make him contributorily negligent. In a Massachusetts case, *King v. Solomon*, 323 Mass. 326, 81 N.E. 2d 838 (1948), a physician addicted his patient to morphine in the absence of a diagnosis that her painful condition could not be cured. Plaintiff-patient actively sought the drug. The court ruled that the fact that plaintiff knew she was addicted and actively sought the narcotic did not make her contributorily negligent. In a New Mexico case, *Los Alamos Medical Center, Inc. v. Coe*, 58 N.M. 686, 275 P. 2d 175 (1954), the plaintiff became addicted to drugs as a result of her doctor's negligence. The plaintiff had continuing confidence in her doctor, and was assured by her doctor that there was no cause for alarm. Plaintiff, in that case, often begged for the drugs. The court found that she had the right to rely on her doctor and was not contributorily negligent. Defendant's attempts to distinguish these cases from the case *sub judice* are unsuccessful and point clearly to disputed issues of fact, such as whether plaintiff refused to go to the hospital when requested by defendant, and whether defendant's threats of refusing drugs were effectual and sufficient to render plaintiff contributorily negligent in continuing his addiction. Again we must reiterate that summary judgment must never be granted when there are

*any* disputed issues of material fact. Plaintiff could not possibly be found guilty of contributory negligence as a matter of law.

The court's grant of summary judgment could also be upheld if plaintiff's action was barred by the three-year statute of limitations governing medical malpractice actions. G.S. 1-52. Plaintiff contends that the action accrued at the termination of the physician-patient relationship in 1974. Defendant contends that the plaintiff's cause of action accrued at the time the plaintiff first became addicted to drugs.

The time at which an action for malpractice accrues is currently governed by G.S. 1-15(b)-(c). Subsection (b) governs those malpractice cases in which the "injury, defect or damage [is] not readily apparent to the claimant at the time of its origin. . . ." This subsection, which governs "latent injury" type cases, provides that the action accrues at the time the injury is discovered, provided that, the action must be brought within 10 years of the last act of the defendant. This amendment to G.S. 1-15 was effective 22 July 1971.

Subsection (c), effective 1 January 1977, provides that:

> "[A] cause of action for malpractice arising out of the performance of or failure to perform professional services shall be deemed to accrue at the time of the occurrence of the last act of the defendant giving rise to the cause of action: Provided that whenever . . . the injury, loss, defect or damage [is] not readily apparent to the claimant at the time of its origin, and the injury, loss, defect or damage is discovered or should reasonably be discovered by the claimant two or more years after the occurrence of the last act of defendant giving rise to the cause of action, suit must be commenced within one year from the date discovery is made. . . ."

[4] These amendments do not apply retroactively to revive actions already barred at common law, nor do they affect pending litigation. They do, however, apply to those cases which have not yet accrued, or accrued within three years immediately preceding the effective date of the amendments. *Nationwide Mut. Ins. Co. v. Weeks-Allen Motor Co.*, 18 N.C. App. 689, 198 S.E. 2d 88 (1973). *See Shuler v. Dyeing Machine Co.*, 30 N.C. App. 577, 227 S.E. 2d

634, *cert. denied* 291 N.C. 177, 229 S.E. 2d 690 (1976). In the case *sub judice*, the prescription of narcotic drugs spanned the years from 1960 to 1974. The case, however, was pending at the time subsection (c) was enacted and so that section cannot apply. *See Nationwide Mut. Ins. Co., supra.* Nor does subsection (b) apply, since that section is applicable to the "latent injury" type case, and not those cases such as the one now before us which involves a course of continued negligent treatment. Therefore, the determination of this case will be controlled by case law.

The landmark North Carolina case, decided prior to the adoption of G.S. 1-15 which determines when the statute of limitations for a malpractice action commences, is *Shearin v. Lloyd*, 246 N.C. 363, 98 S.E. 2d 508 (1957). In *Shearin*, the plaintiff's appendix was removed by the defendant on 20 July 1951. After the operation, plaintiff returned to the defendant's care for a six- and twelve-month checkup. On 15 November 1952, the plaintiff complained to the defendant of severe abdominal pain. At defendant's request, X rays were taken. On 18 November 1952, the defendant notified the plaintiff that a lap-pack had been left in plaintiff's abdomen during the operation in 1951. The next day, the defendant operated on the plaintiff and removed the lap-pack. Plaintiff filed an action for malpractice on 14 November 1955. The defendant pled the statute of limitations as a bar. Plaintiff contended that the action accrued on 15 November 1952 when the plaintiff discovered the existence of the lap-pack. The court in *Shearin* specifically rejected the time of plaintiff's discovery of the injury as the time at which the action accrued, and held that the action was barred. The court discussed the "continued course of treatment" rule adopted in many states, but stated that there was no allegation in the complaint that the defendant was negligent in failing to discover the lap-pack. The court also noted that the treatment for the appendicitis ended at the twelve-month checkup, which was more than three years before suit was filed. Therefore, even under the continued course of treatment rule, the action was barred. The applicability of the continued course of treatment exception to the time of accrual was, therefore, not squarely before the court in *Shearin*.

In the case *sub judice*, however, the plaintiff alleged that the defendant was negligent in continuing to prescribe narcotic drugs for the plaintiff during the years 1962 to 1974. This case directly

presents the question of whether or not North Carolina recognized the continued course of treatment rule at common law, and, therefore, this is a case of first impression.

Both the discovery rule and the continued course of treatment rule are exceptions to the harsh common law rule which provides that the action accrues at the time of the defendant's negligence. Each rule, however, is designed to apply to a distinct factual pattern. *See, Ehlen v. Burrows*, 51 Cal. App. 2d 141, 124 P. 2d 82 (1942); *Billings v. Sisters of Mercy*, 86 Idaho 485, 389 P. 2d 224 (1964); *Waldman v. Rohrbaugh*, 241 Md. 137, 215 A. 2d 825 (1965); *Jones v. Sugar*, 18 Md. App. 99, 305 A. 2d 219 (1973); *Murray v. Fox*, 300 Minn. 373, 220 N.W. 2d 356 (1974). The discovery rule applies to the "latent injury" cases in which the doctor negligently harms the patient, but the patient is unaware of the injury. It usually involves one distinct act of negligence. *See, Tortorello v. Reinfeld*, 6 N.J. 58, 77 A. 2d 240 (1950); *Woodgeard v. Miami Valley Hospital Society*, 47 Ohio Misc. 43, 72 Ohio Ops. 2d 387, 354 N.E. 2d 720 (1975); 61 Am. Jur. 2d Physicians, Surgeons and Other Healers, § 183. The continued course of treatment rule, however, applies to situations in which the doctor continues a particular course of treatment over a period of time. The theory is that "so long as the relationship of surgeon and patient continued, the surgeon was guilty of malpractice during that entire relationship for not repairing the damage he had done and, therefore, the cause of action against him arose at the conclusion of his contractual relationship." *DeLong v. Campbell*, 157 Ohio St. 22, 25, 47 Ohio Ops. 27, 104 N.E. 2d 177, 178 (1952). 61 Am. Jur. 2d Physicians, Surgeons, and Other Healers, § 185. *Shearin* clearly falls within the former factual pattern. Here, however, the plaintiff alleged that the defendant's negligent acts continued until 1974. "[W]here the injurious consequences arise from a continuing course of *negligent* treatment . . . the statute does not ordinarily begin to run until the injurious treatment is terminated. . . . The malpractice in such cases is regarded as a continuing tort because of the persistence of the physician or surgeon in continuing and repeating the *wrongful* treatment." 6 N.J. at 66, 77 A. 2d at 244.

The rejection of the discovery rule exception to the time of accrual of a cause of action in malpractice does not require the rejection of the continuing course of treatment exception. Several states have rejected the discovery rule but have judicially adopt-

ed the continued course of treatment exception. *See* generally *Budoff v. Kessler*, 284 App. Div. 1049, 135 N.Y.S. 2d 717 (1954); *DeLong v. Campbell, supra,* later modified by *Melnyk v. Cleveland Clinic*, 32 Ohio St. 2d 198, 61 Ohio Ops. 2d 430, 290 N.E. 2d 916 (1972); *Peteler v. Robinson*, 81 Utah 535, 17 P. 2d 244 (1932). Compare *Silvertooth v. Shallenberger*, 49 Ga. App. 133, 174 S.E. 365 and 49 Ga. App. 758, 176 S.E. 829 (1934) with *Parker v. Vaughan*, 124 Ga. App. 300, 183 S.E. 2d 605 (1971); compare, *Tortorello, supra,* and *Fernandi v. Strully*, 35 N.J. 434, 173 A. 2d 277 (1961), with *Weinstein v. Blanchard*, 109 N.J.L. 332, 162 A. 601 (1932); and compare *Hotelling v. Walther*, 169 Or. 559, 130 P. 2d 944 (1942) with *Wilder v. Haworth*, 187 Or. 688, 213 P. 2d 797 (1950) overruled, *Frohs v. Greene*, 253 Or. 1, 452 P. 2d 564 (1969). Therefore, the holding by the North Carolina Supreme Court in *Shearin* does not preclude the adoption of the continued course of treatment rule at this time.

Statutes of limitation are designed to prevent stale claims and to protect potential defendants from protracted fear of litigation. 51 Am. Jur. 2d Limitation of Actions §§ 17-18. The "discovery" rule, if judicially adopted, would permit suit to be brought many years after the act of negligence which caused the injury. This exception runs afoul of both policies for placing time limits on bringing actions. (It should be noted that the legislature, in adopting the "discovery" rule in 1971 placed a 10-year limitation on such claims.) The continued course of treatment rule, however, offends neither of these purposes, since suit must be brought within three years after the termination of the continued negligent treatment by the physician. Consequently, the facts and circumstances surrounding the treatment are still relatively fresh, and the physician can be sure that after three years from severing a relationship with a patient, the patient is barred from bringing suit for such treatment.

[5] We therefore hold that the continued course of treatment rule is applicable to this case, and therefore the cause of action did not automatically accrue in 1962 as asserted by the defendant.

The continued course of treatment exception is a limited one. Several courts have held that the statute begins to run at the time the patient knew or should have known of his injury, even if this occurs prior to the severance of the doctor-patient relation-

ship. *See, Ehlen v. Burrows, supra, Hundley v. St. Francis Hospital,* 161 Cal. App. 2d 800, 327 P. 2d 131 (1958); *Jones v. Sugar, supra; Waldman v. Rohrbaugh, supra; McFarland v. Connally* (Tex. Civ. App.), 252 S.W. 2d 486 (1952). We hold that the cause of action accrued at the earlier of (1) the termination of defendant's treatment of the plaintiff or (2) the time at which the plaintiff knew or should have known of his injury.

The facts in this case clearly show that the plaintiff had knowledge of his addiction in 1962. However, "the limitation period starts to run when the patient discovers . . . the negligent act which caused his injury. . . ." *Jones v. Sugar,* 18 Md. App. at 105, 305 A. 2d at 223. "[T]he injury may be readily apparent but the fact of *wrong* may lay hidden until after the prescribed time has passed." (Emphasis added.) *Jones, supra,* 18 Md. App. at 105, n. 3, 305 A. 2d at 223, n. 3. *See, Lopez v. Swyer,* 62 N.J. 267, 274, 300 A. 2d 563, 567 (1973). In *Hundley, supra,* the plaintiff underwent abdominal surgery and during the operation her ovaries were removed *without her prior consent.* The doctor informed her that the operation was necessary due to ovarian cysts. The patient later discovered that her ovaries had been healthy and the surgery was not necessary. The court held that the action accrued when she discovered that the operation was unnecessary.

[6] Although *Hundley* involved a "latent injury" and the court applied the "discovery" rule in effect in California in determining when the action arose, the same rule is applicable in ascertaining when the plaintiff knew or should have known of his injuries in the case at bar. Here, the plaintiff, although aware of his addiction, contends that he was not aware that the treatment provided by the defendant was not necessary to relieve the pain of Charcot-Marie-Tooth disease. There is conflicting evidence relating to whether the plaintiff knew or should have known that the medication was not necessary prior to the termination of the doctor-patient relationship in 1974. This is a question for the jury to decide.

Since there exists a genuine issue as to material fact as to when the plaintiff knew or should have known that the treatment was not necessary, summary judgment was not appropriate.

For the reasons stated above defendant's motion for summary judgment was improvidently granted.

Reversed and remanded for proceedings consistent with this opinion.

Judges PARKER and ERWIN concur.