Gail **CONNER**, Plaintiff–Appellant,

v.

**ST. LUKE'S HOSPITAL, INCORPORATED**, Defendant–Appellee.

No. 92–1798.

United States Court of Appeals, Fourth Circuit.

Argued April 2, 1993.

Decided June 9, 1993.

652

Gary W. Poliakoff, Poliakoff, Poole & Associates, Spartanburg, SC, argued, for plaintiff-appellant.

Charles Edward Burgin, Dameron & Burgin, Marion, NC, argued, for defendant-appellee.

Before ERVIN, Chief Judge, WIDENER, Circuit Judge, and WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.

## OPINION

ERVIN, Chief Judge:

Gail Conner brought this diversity-based medical malpractice action against St. Luke's Hospital, Inc. ("St. Luke's" or the hospital) for damages she suffered after St. Luke's allegedly withheld an x-ray report from Conner and her family physician. The parties consented to have the matter resolved before a magistrate judge pursuant to 28 U.S.C. § 636(c). Following St. Luke's motion for summary judgment, the magistrate judge dismissed Conner's action as untimely filed. After reviewing Conner's contentions on appeal, we agree with the magistrate judge and affirm.

I

On May 18, 1986, Conner visited the emergency room of St. Luke's in Columbus, North Carolina, complaining of asthma. Dr. Ed Spilker, an emergency room physician, examined Conner and ordered that a chest x-ray be taken. Dr. Spilker then discharged Conner to the care of her family physician, Dr. Sandra McCormack. A radiologist read and interpreted the chest x-ray on May 19, 1986, and detected lesions on Conner's lungs. The radiologist does not recall specifically relating this information to Conner's personal physician, but Dr. McCormack saw Conner on May 19, 1986, and received a copy of the record of the emergency room visit indicating that an x-ray was taken.

Conner returned to the St. Luke's emergency room on May 25, 1986 again complaining of asthma. She was seen by Dr. Evans Whittaker, another emergency room physician. Dr. Whittaker treated Conner and discharged her with instructions to continue a prescribed course of medication and to go to Dr. McCormack's office for additional testing. Conner continued to see and receive treatment from Dr. McCormack, meeting Dr. McCormack at the St. Luke's emergency room on at least one other occasion for undisclosed treatments.

On December 16, 1987, Conner saw Dr. McCormack at her office for an elevated temperature, cough, chest pain, and wheezing, which the doctor diagnosed as symptoms of a viral syndrome common with asthmatic patients. On December 22, 1987, Conner again contacted Dr. McCormack, complaining of expectorating blood. Dr. McCormack ordered Conner to St. Luke's for a chest x-ray. The radiologist who interpreted the earlier x-ray also interpreted this x-ray and noted multiple cavitary lesions on Conner's lungs. The radiologist informed Dr. McCormack of the results of the prior May 1986 x-ray at this time.

Conner alleges that on December 22, 1987 she first learned that her x-ray of May 1986 revealed lung lesions. On December 21, 1990, Conner commenced her medical malpractice action against St. Luke's for the nondisclosure of the earlier identified chest lesions.

II

The sole issue presented on appeal is whether the magistrate judge properly held, on St. Luke's motion for summary judgment, that Conner's cause of action was barred by the statute of limitations imposed by section 1–15(c) of the North Carolina General Statutes. In reviewing a grant of summary judgment, we apply the same standards as the magistrate judge and our scope of review is *de novo. Miller v. FDIC,* 906 F.2d 972, 974 (4th Cir.1990); *Farwell v. Un,* 902 F.2d 282, 287 (4th Cir.1990). Summary judgment is appropriate in those cases in which there is no genuine dispute as to a material fact, and

the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Miller*, 906 F.2d at 973. When reviewing a motion for summary judgment, we must draw any inferences in the light most favorable to the non-movant, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), and determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The applicable statute of repose and limitations for medical malpractice actions in North Carolina is found at section 1–15(c) of the North Carolina General Statutes, N.C.Gen.Stat. § 1–15(c). The statute provides, in relevant parts, that

> a cause of action for malpractice ... shall be deemed to accrue at the time of the occurrence of the last act of the defendant giving rise to the cause of action: Provided that whenever ... the injury, loss, defect or damage is discovered or should reasonably be discovered by the claimant two or more years after the occurrence of the last act of the defendant giving rise to the cause of action, suit must be commenced within one year from the date discovery is made: Provided nothing herein shall be construed to reduce the statute of limitation in any such case below three years. Provided further, that in no event shall an action be commenced more than four years from the last act of the defendant giving rise to the cause of action....

*Id.*

Because Conner discovered the hospital's failure to report the May 1986 x-ray within two years of the date the x-ray was made, Conner may not avail herself of the extension of the filing period conferred as a result of latent injuries. Therefore, Conner must have filed her action within three years of the last act of alleged negligence by St. Luke's to escape the time bar of section 1–15(c). St. Luke's contends that the May 1986 x-ray represents the last act of alleged negligence, and that Conner's action four years and seven months after that act is time barred. Conner asserts that the continued course of treatment exception to the three-year statute of limitations recognized by the North Carolina courts mandates that her cause of action accrue with her last visit to St. Luke's in December 1987. A December 1987 accrual date would place Conner's action within the three-year statute of limitations.

The North Carolina Court of Appeals[1] first recognized the continued course of treatment exception in *Ballenger v. Crowell*, 38 N.C.App. 50, 247 S.E.2d 287 (1978). The *Ballenger* court held:

> The continued course of treatment rule ... applies to situations in which the doctor continues a particular course of treatment over a period of time. The theory is that "so long as the relationship of surgeon and patient continued the surgeon was guilty of malpractice during that entire relationship for not repairing the damage he had done and, therefore, the cause of action against him arose at the conclusion of his contractual relationship."

*Id.* at 58, 247 S.E.2d at 293 (quoting *DeLong v. Campbell*, 157 Ohio St. 22, 25, 47 O.O. 27, 28, 104 N.E.2d 177, 178 (1952), *overruled by Oliver v. Kaiser Community Health Foundation*, 5 Ohio St.3d 111, 117–18, 5 OBR 247, 252–53, 449 N.E.2d 438, 443–44 (1983)).[2]

Continuing to apply the course of treatment exception when given the opportunity, the North Carolina Court of Appeals elaborated on its scope as recently as 1990. *See Stallings v. Gunter*, 99 N.C.App. 710, 714, 394 S.E.2d 212, 215, *disc. rev. denied*, 327 N.C. 638, 399 S.E.2d 125 (1990). In *Stallings*, the court recognized the applicability of the exception "so long as the patient has remained under the continuous treatment of the physician for the injuries which gave rise to the cause of action." *Id.* "[T]he physician

---

1. The Supreme Court of North Carolina has yet to review the applicability of the continued course of treatment exception.

2. In *Oliver* the Ohio Supreme Court modified its statute of limitations to permit accrual of a cause of action when a patient discovers the resulting injury despite whether the patient-physician relationship has terminated.

[must] continue[ ] to treat the patient for the particular disease or condition created by the original act of negligence." *Id.* The court further outlined that "[t]o take advantage of the 'continuing course of treatment' doctrine, plaintiff must 'show the existence of a *continuing* relationship with his physician, and . . . that he received *subsequent* treatment from that physician.' " *Id.* at 715, 394 S.E.2d at 216 (quoting Dana D. Peck, Comment, *The Continuous Treatment Doctrine: A Toll on the Statute of Limitations for Medical Malpractice in New York,* 49 Alb.L.Rev. 64, 72 (1984)) (emphasis added by court); *see generally* Sarah E. Price, Note, Stallings v. Gunter: *The North Carolina Court of Appeals Bids Farewell to the Medical Malpractice Statute of Repose,* 69 N.C.L.Rev. 1399, 1403–08 (1991) (discussing general state of the continued course of treatment exception as recognized in North Carolina).

Despite its consistent application of the continued course of treatment exception, the North Carolina Court of Appeals has noted one limitation on its operation. In *Mathis v. May,* 86 N.C.App. 436, 358 S.E.2d 94, *disc. rev. denied,* 320 N.C. 794, 361 S.E.2d 78 (1987), the court noted that

[a]lthough North Carolina has recognized the doctrine of a 'continued course of treatment' to extend the statute of limitations, it has never applied the doctrine where there has been a continued course of non-treatment.

*Id.,* 86 N.C.App. at 440, 358 S.E.2d at 97. Here, the North Carolina court makes a distinction between the physician who prescribes a negligent course of treatment and then never rectifies the situation by adjusting treatment and the physician who never embarks on a necessary course of treatment in the first instance. In the latter case, the negligence occurs with the oversight occasioned by non-treatment and is not ongoing. Conversely, in the former case, the physician commits an affirmative blunder and, while continually reassessing the situation, fails to correct this blunder. The North Carolina courts view the negligence in this case to continue throughout the course of treatment.

Conner alleges that the hospital's failure to inform her of the May 1986 x-ray results or to prescribe a course of treatment commensurate with the x-ray results represents an act of negligence. Because the failure to inform continued up until Conner became aware of the x-ray results in December 1987, Conner alleges that the continued course of treatment exception should apply, marking the hospital's last act of negligence as its continued treatment of Conner during her trip to its emergency room in December for the second x-ray. Under this interpretation of the statute of limitations, Conner's action would not be time barred.

Conner's attempt to invoke the continued course of treatment exception fails for several reasons. First, Conner fails to establish the basic elements of the exception. The exception contemplates an ongoing patient-physician relationship revolving around a course of treatment directed at a certain malady. Both parties agree that Conner was in the constant care of her personal physician, Dr. McCormack, during the course of her intermittent visits to St. Luke's. After each visit to St. Luke's, Conner was released into the care of Dr. McCormack, often with specific instructions to report to Dr. McCormack for follow-up treatments. Conner went to St. Luke's for the second set of x-rays at the direction of Dr. McCormack, not in the pursuit of treatment from the hospital itself.

In addition, Conner points to inaction on the part of St. Luke's as a negligent act. The *Mathis* court articulated an aversion to applying the continued course of treatment exception to such non-treatment cases, recognizing that the very policy behind the exception was to encourage physicians to correct past mistakes in the course of treatment. When a physician fails to treat in the first instance, the negligence has occurred and does not continue in the same sense as when the physician persists in a negligent act of treating. Therefore, Conner's circumstances do not fit the situations in which the North Carolina courts have applied the continued course of treatment exception.

## III

Viewing the facts in a light most favorable to Conner, the magistrate judge was correct

in concluding that her situation fails, as a matter of law, to establish the type of ongoing treatment that would give rise to the continued course of treatment exception. Conner has not shown how St. Luke's treated her for her asthma or how her unscheduled visits to the St. Luke's emergency room represented an ongoing relationship to advance the treatment of her asthma. Without making out these components of the continued course of treatment exception, Conner fails to overcome the magistrate judge's conclusions that her cause of action accrued in May of 1986 when she got the first x-ray and thus was time barred by section 1–15(c) when brought in December 1990. Therefore, we affirm the magistrate judge's dismissal of the action on St. Luke's motion for summary judgment.

**AFFIRMED.**