**PEERLESS INS. CO. v. GENELECT SERVS., INC.**

[187 N.C. App. 124 (2007)]

PEERLESS INSURANCE COMPANY, a/s/o ANTHONY AND DEBRA ADAMS, PLAINTIFFS v. GENELECT SERVICES, INC., DEFENDANT

No. COA06-1369

(Filed 6 November 2007)

### Negligence— maintenance of home generator—summary judgment—mere speculation

The trial court did not err by granting summary judgment in favor of defendant in a negligence case arising out of the maintenance of a home generator that allegedly caused a fire at the insured parties' home, because plaintiff fire insurer alleged negligence without more than mere speculation when: (1) between the time the inspection was made and the time the fire investigator for plaintiff investigated the fire scene, there had been two hurricanes, torrential rainfalls, fire hoses with high water pressure, firemen crawling through the window above the generator, and the fire itself; (2) any observation that the muffler was pointed down at a slight angle and covered with mulch was insufficient to submit the case to the jury since there were far too many other possible causes of the unsafe condition, and plaintiff gave no evidence to support the chosen theory that negligent maintenance occurred; and (3) defendant did not need to provide evidence that it was not responsible for causing the fire since the burden shifted to plaintiff after defendant produced evidence showing that the last maintenance inspection was normal.

Judge STROUD dissenting.

Appeal by plaintiff, Peerless Insurance Company, from the Order for Summary Judgment entered 10 August 2006 by Judge Ronald K. Payne in Buncombe County Superior Court. Heard in the Court of Appeals 26 April 2007.

*Cozen O'Connor, by Albert S. Nalibotsky and Jay M. Goldstein, for plaintiff appellant.*

*The Van Winkle Law Firm, by Michelle Rippon, for defendant appellee.*

McCULLOUGH, Judge.

Plaintiff Peerless Insurance Company (Peerless) provided fire insurance to Anthony and Debra Adams for their home located in

PEERLESS INS. CO. v. GENELECT SERVS., INC.

[187 N.C. App. 124 (2007)]

the Biltmore Forest section of Asheville. On 18 September 2004, following the second of two hurricanes to strike Western North Carolina, a fire damaged the Adams residence resulting in a claim in excess of $400,000 which Peerless paid. Peerless, as subrogee of the insured parties (the Adamses), filed suit against defendant alleging that defendant's maintenance of a home generator caused the fire.

Defendant filed a motion for summary judgment which was granted and from which Peerless appeals. For the reasons which follow, we uphold the superior court's order granting summary judgment in favor of defendant.

The evidence before the trial court, viewed in the light most favorable to Peerless, showed that the generator was serviced on 9 August 2004, just over a month before the fire. The service technician was deposed and testified that he completed a standard service report noting nothing unusual and indicating the unit was in good working order, including the clamp, muffler and exhaust clip. He stated that had he noted anything unusual, he would have called it to the owner's attention or repaired it.

Between 9 August 2004 and 18 September 2004, two hurricanes hit the Asheville area. The first was Hurricane Frances and was followed on 1 September by Ivan. The generator had operated each week during this period and at about 10:00 p.m. on 16 September 2004, began running more or less continuously until the Adamses' daughter noticed flames on the back of the house near the generator around 1:30 p.m. on 18 September 2004.

On 23 September 2004, plaintiff's fire investigator inspected the Adamses' residence and found the extension pipe clamped to the exhaust pipe was facing the ground and about 2 inches into mulch surrounding the generator (and not at the 45° angle the service technician had indicated was normal).

Mr. John Cavallaro, hired by Peerless, also inspected the generator on 27 September 2004, and found the same conditions present but could not find any malfunction which could have caused the fire.

Peerless also hired an engineering company which determined that the heat of the exhaust could easily have started the fire by igniting the mulch.

**PEERLESS INS. CO. v. GENELECT SERVS., INC.**

[187 N.C. App. 124 (2007)]

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. R. Civ. P. 56(c). "The movant may meet this burden by proving that an essential element of the opposing party's claim is nonexistent . . . ." *Roumillat v. Simplistic Enterprises, Inc.*, 331 N.C. 57, 63, 414 S.E.2d 339, 342 (1992) (quoting *Collingwood v. G.E. Real Estate Equities*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989)).

To survive a summary judgment motion, plaintiffs must show that either (1) defendant negligently created the condition, or (2) defendant negligently failed to correct the condition after actual or constructive notice of its existence. *See France v. Winn-Dixie Supermarket, Inc.*, 70 N.C. App. 492, 320 S.E.2d 25 (1984), *disc. review denied*, 313 N.C. 329, 327 S.E.2d 889 (1985). Additionally, where there are many other reasonable explanations for the condition at issue, plaintiffs must present some factual evidence to remove their theory from the realm of mere speculation. *See Williamson v. Food Lion, Inc.*, 131 N.C. App. 365, 369, 507 S.E.2d 313, 316 (1998), *aff'd*, 350 N.C. 305, 513 S.E.2d 561 (1999).

Finally, the standard of review of an order granting summary judgment is *de novo. Diggs v. Novant Health, Inc.*, 177 N.C. App. 290, 294, 628 S.E.2d 851, 855 (2006).

## NEGLIGENCE

Plaintiff alleges negligence without more than mere speculation. Here the plaintiff's subrogee, Mr. Adams, testified that he had not checked on the generator between the date of the maintenance inspection and the date of the fire. He also stated that after the fire, firemen who had entered through the dining room window near the generator were all over.

Between the time the inspection was made and the time the fire investigator for Peerless investigated the fire scene, there had been two hurricanes, torrential rainfalls, fire hoses with high water pressure, firemen crawling through the window above the generator, and the fire itself. Thus, any observation that the muffler was pointed down at a "slight angle" and covered with mulch is insufficient to submit the case to the jury. There are far too many other possible causes of the unsafe condition, and plaintiff gave no evidence to support the chosen theory that negligent maintenance occurred.

**PEERLESS INS. CO. v. GENELECT SERVS., INC.**

[187 N.C. App. 124 (2007)]

It is well settled that a plaintiff must offer some factual evidence to show that his or her theory is more than mere speculation. *Williamson,* 131 N.C. App. at 369, 507 S.E.2d at 316; *Roumillat,* 331 N.C. at 64, 414 S.E.2d at 343.

With two hurricanes and the torrential rains and winds associated with these weather systems, the fact that Mr. Adams did not inspect the generator between the last maintenance visit and the fire, the exhaust pipe being found post-fire pointed down and close to the mulch surrounding the generator is not circumstantial evidence of defendant's negligent maintenance.

N.C.P.I.—Civ. 101.45 (1985) defines circumstantial evidence as "proof of a chain or group of facts and circumstances pointing to the existence or non-existence of certain facts." The discovery of an exhaust pipe pointed directly at the mulch is not evidence of poor maintenance any more than it is of being displaced due to the force of the storm or the actions of the firemen.

Such speculation cannot support Peerless' request for a trial. Defendant need not provide evidence that it was not responsible for causing the fire. Once defendant produced evidence which showed that the last maintenance inspection was normal, the burden shifted to plaintiff to produce specific evidence, not speculation, that defendant's actions were responsible for the fire. *See Roumillat,* 331 N.C. at 63, 414 S.E.2d at 342.

As plaintiff has not been able to forecast evidence that defendant created the conditions causing the fire, and that any theory is mere speculation, the trial court's entry of summary judgment in favor of defendant is

Affirmed.

Judge BRYANT concurs.

Judge STROUD dissents in a separate opinions.

STROUD, Judge, dissenting.

I believe that the trial court erred by granting summary judgment to the defendant, and I therefore respectfully dissent from the majority opinion.

The majority opinion correctly states that the standard of review for a grant of summary judgment is *de novo. See Diggs v. Novant Health, Inc.*, 177 N.C. App. 290, 294, 628 S.E.2d 851, 855, *disc. rev. denied*, 361 N.C. 426, 648 S.E.2d 209 (2006). However, in my opinion, the majority opinion has viewed the evidence in a light more favorable to the defendant and drawn inferences from the evidence in defendant's favor, instead of viewing the evidence in the light most favorable to the plaintiff and drawing inferences in favor of the plaintiff, as we are required to do when considering a motion for summary judgment. *See Ballenger v. Crowell*, 38 N.C. App. 50, 53, 247 S.E.2d 287, 290 (1978).

In addition to the facts as stated by the majority opinion, the pleadings, depositions, and other evidence filed regarding the summary judgment motion, viewed in the light most favorable to plaintiff, *Ballenger at* 53, 247 S.E.2d at 290, indicate the following facts: The Adams' home had a natural gas fueled generator to provide back-up electrical power. The Adams had a maintenance agreement with defendant to "inspect, test and adjust" the generator approximately every six months. Defendant's employee Mike Dichristofaro ("Dichristofaro") performed the regular service and inspection of the generator on 9 August 2004. During his deposition Dichristofaro did not recall the specific inspection of the Adams' generator but testified that his usual procedure included, *inter alia,* inspecting "all the way around the generator" for problems and looking at the exhaust pipe for anything unusual. Dichristofaro testified that he has never had to adjust the angle of an exhaust pipe on any generator to have it be at the proper angle of about 45 degrees, not angled directly down into the mulch or landscaping.

The Adams' home lost electrical power at about 10:00 p.m. on 16 September 2004 and the generator began running. The generator ran continuously until the afternoon of 18 September 2004, when a fire started in the area surrounding the generator. David Lowery, of Eyes on Fire Investigative Services, performed an inspection of the scene of the fire. Mr. Lowery determined that the origin of the fire was "the ignition of mulch surrounding and covering over the exhaust pipe for the natural gas generator." He testified that the extension pipe clamped to the exhaust pipe was "turned downward towards the ground" and was about two inches into the mulch at the time of his inspection on 23 September 2004.

Plaintiff also had an inspection of the generator done by John Cavallaro ("Cavallaro") to determine if any generator malfunction

**PEERLESS INS. CO. v. GENELECT SERVS., INC.**

[187 N.C. App. 124 (2007)]

had caused the fire. Cavallaro inspected the generator on 27 September 2004. He noted that the "exhaust pipe was facing downward at an angle of approximately 30 degrees with the horizontal. It was pointing at the ground which was burned from the fire." However, he did not find any indication of a generator malfunction which could have caused the fire.

Plaintiff also had Forensic Engineering Incorporated perform tests to determine the exhaust temperatures of the generator and whether the exhaust could have ignited the mulch surrounding the generator. The testing demonstrated that "operation of the generator under normal household loads and with the tailpiece within a few inches of wood mulch could readily result in mulch ignition and subsequent fire spread."

"Summary judgment is a drastic measure, and it should be used with caution, especially in a negligence case in which a jury ordinarily applies the reasonable person standard to the facts of each case." *Rone v. Byrd Food Stores, Inc.*, 109 N.C. App. 666, 668, 428 S.E.2d 284, 285 (1993). We must construe all of the evidence "in the light most favorable to the non-moving party. The slightest doubt as to the facts entitles the non-moving party to a trial." *Ballenger*, 38 N.C. App. at 53, 247 S.E.2d at 290. Where there are "[c]onflicting inferences of causation arising from the evidence" the motion for summary judgment should be denied and the case submitted to the jury. *Mills, Inc. v. Terminal, Inc.*, 273 N.C. 519, 529, 160 S.E.2d 735, 743 (1968).

To show a *prima facie* case of negligence, the plaintiff must establish "defendant owed plaintiff a duty of care; defendant's conduct breached that duty; the breach was the actual and proximate cause of plaintiff's injury; and damages resulted from the injury." *Rone*, 109 N.C. App. at 669, 428 S.E.2d at 285. Defendant argues, and the majority opinion agrees, that plaintiff has not offered *any* evidence, beyond speculation, that the generator was defective prior to the fire or that defendant was responsible for the improper position of the exhaust pipe; thus defendant claims that plaintiff has failed to forecast evidence of both defendant's breach of duty and of causation which are required to survive defendant's motion for summary judgment. See *id.*

However, plaintiff has forecast circumstantial evidence to support its claim that the defendant failed to properly inspect or repair the generator or failed to notify or warn the Adams regarding the position of the exhaust pipe. Such evidence, if believed by a jury,

could establish both the breach and causation elements of negligence. Circumstantial evidence can be used to prove negligence. *Howie v. Walsh*, 168 N.C. App. 694, 609 S.E.2d 249 (2005). Negligence can be "inferred from facts and attendant circumstances, and if the facts proved establish the more reasonable probability that the defendant was guilty of actionable negligence, the case cannot be withdrawn from the jury, though the possibility of accident may arise on the evidence." *Etheridge v. Etheridge*, 222 N.C. 616, 618, 24 S.E.2d 477, 479 (1943).

Due to the service contract with the Adams, defendant had a duty of care to maintain the generator in a safe condition, including making sure that the exhaust pipe was properly positioned and that mulch was not obstructing the unit. Plaintiff has demonstrated by the depositions and exhibits submitted in opposition to the summary judgment motion that the exhaust pipe of the generator was improperly positioned and that the heat from the exhaust pipe ignited the mulch, thus creating the fire which damaged the home. Viewed in the light most favorable to plaintiff, *Ballenger* at 53, 247 S.E.2d at 290, the evidence does not indicate that the exhaust pipe was actually in the correct position when Dichristofaro inspected it as he could not recall the inspection and testified only to his "ususal procedure."

The exhaust pipe was not loose or easily moved from its position, either before or after the fire. In fact, the evidence is that the pipe was firmly secured in position by a clamp and a U-bolt. One of the inspectors after the fire had to remove the clamp and U-bolt as part of his inspection and noted that the clamp was "secured right against the back cover of the generator." This would indicate that the exhaust pipe had not been moved by rain, wind, fire hoses, or firemen.

The majority opinion discounts the actual and circumstantial evidence and any reasonable inferences from the evidence forecast by plaintiff, and instead stresses inferences in favor of the defendant, mentioning "two hurricanes and the torrential rains and winds associated with these weather systems." However, there is no evidence whatsoever that rain or wind could have changed or did change the position of the exhaust pipe, which was found firmly bolted into position. There was no evidence showing that torrential rain would result in any flow of water which might have moved the mulch around the generator. Indeed, the generator was positioned in such a way that water flow from rain would not interfere with its operation, and there was no evidence of excessive water in that area.

The majority's statement "that Mr. Adams did not inspect the generator between the last maintenance visit and the fire" almost seems to imply contributory negligence, which would certainly be an inappropriate basis for summary judgment for defendant in this case. *Martishius v. Carolco Studios, Inc.*, 355 N.C. 465, 475, 562 S.E.2d 887, 896 (2002) ("The existence of contributory negligence is ordinarily a question for the jury; such an issue is rarely appropriate for summary judgment, and only where the evidence establishes a plaintiff's negligence so clearly that no other reasonable conclusion may be reached").

It is true, as defendant argues, that a jury may find it more likely that the position of the exhaust pipe was changed after the inspection by Dichristofaro and prior to the fire or that the exhaust pipe was moved after the fire by water from the fire hoses, firemen moving around the generator, or some other cause. It is possible that a jury may find that after the inspection, the mulch somehow covered the exhaust pipe in such a manner that the mulch could be ignited. However, either of these findings would necessarily be based upon inferences from the evidence in favor of defendant. A jury is permitted to make such inferences, but this Court may not make inferences in favor of defendant in considering a grant of summary judgment. *See Ballenger* at 53, 247 S.E.2d at 290. A jury could also find from the evidence that the exhaust pipe was improperly positioned prior to the fire and/or that there was mulch obstructing the exhaust pipe and that defendant's employee should have corrected the condition. As this is a question for the jury, summary judgment was improper.

For these reasons, I dissent, and would reverse the trial court's order granting summary judgment to defendant.