IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-529

No. COA20-619

Filed 5 October 2021

Mecklenburg County, No. 12-CVS-11552

DONALD PODREBARAC, Plaintiff,

v.

HORACK, TALLEY, PHARR & LOWNDES, P.A., and GENA G. MORRIS, Defendants.

Appeal by Plaintiff from an order entered 10 February 2020 by Judge Jesse B. Caldwell, III, in Mecklenburg County Superior Court. Heard in the Court of Appeals 26 May 2021.

*The Law Offices of James Scott Farrin, by Paul R. Dickinson Jr., Gary W. Jackson, and Christopher R. Bagley, for the Plaintiff-Appellant.*

*Poyner Spruill LLP, by Cynthia L. Van Horne, for the Defendants-Appellees.*

DILLON, Judge.

¶ 1     Plaintiff Donald R. Podrebarac appeals from an order granting summary judgment for Defendants, Horack, Talley, Pharr & Lowndes, P.A., and Gena G. Morris. We vacate and remand.

I.      Background

¶ 2     Plaintiff commenced this action claiming Defendants committed legal malpractice in their representation of him in an equitable distribution matter (the

"domestic case") against his ex-wife. During the mediation in the domestic case, Plaintiff and his ex-wife verbally agreed to a distribution of assets. At the conclusion of the mediation, they signed a document (hereinafter the "Stipulations") that essentially outlined what they had just verbally agreed to. Further, the Stipulations provided that they agreed to *formalize* the terms pertaining to "property settlement and alimony provisions" in a to-be-drafted settlement agreement.

When Defendants presented the Stipulations to the trial court on behalf of their client (Plaintiff) for entry, Defendants mistakenly forgot to attach an accompanying "Asset Chart" *and* failed to have the Stipulations notarized. *See* N.C. Gen. Stat. § 50-20(d) (2009) (requiring that to settle equitable distribution with a stipulation, the stipulation must be notarized). The Asset Chart was significant as it set forth the agreed-upon distribution of all property between the parties.

In any event, a document entitled "Marital Property Settlement Agreement" was circulated amongst the Plaintiff and his ex-wife to formalize their oral agreement, but neither signed the document. Notwithstanding the foregoing, for two years, Plaintiff and his ex-wife acted in lockstep with the terms set forth in this unsigned document.

At some point, though, Plaintiff's ex-wife began questioning the legitimacy of the Stipulations, triggering Plaintiff to file a Motion for Declaratory Judgment. Plaintiff's ex-wife responded with a motion to dismiss. The court ruled in her favor,

finding the Stipulations to be unenforceable, primarily because they were not notarized.

¶ 6 After continued litigation, Plaintiff and his ex-wife finally settled the dispute, though Plaintiff found the terms less favorable than the terms he thought he and his wife had orally agreed to at their mediation.

¶ 7 Because of the "unfavorable" settlement in the domestic case, Plaintiff filed this present malpractice action, claiming that Defendants' failure to properly file the Stipulations caused further litigation with his ex-wife, resulting in additional legal fees and a less favorable result. In response, Defendants filed a motion to dismiss based on the statute of limitations, which the trial court granted. On appeal, in *Podrebarac v. Horack, Talley, Pharr, & Lowndes, P.A.*, 231 N.C. App. 70, 752 S.E.2d 661 (2013), we reversed and remanded. Upon remand, the parties proceeded with discovery, but ultimately, the trial court entered an order granting summary judgment for Defendants. Plaintiff timely appealed.

## II. Standard of Review/Legal Malpractice

¶ 8 The standard of review on appeal from a grant of summary judgment is *de novo*. *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 523, 723 S.E.2d 744, 747 (2012). "The party moving for summary judgment is entitled to judgment as a matter of law only when there is no genuine issue of material fact." *Creech v. Melnik*, 347 N.C. 520, 526, 495 S.E.2d 907, 911 (1998).

¶ 9      As for legal malpractice, to prevail against one's attorney, the client must show "(1) that the attorney breached the duties owed to his client . . . and that this negligence (2) proximately caused (3) damage to the plaintiff." *Rorrer v. Cooke*, 313 N.C. 338, 355, 329 S.E.2d 355, 366 (1985).

### III.      Analysis

¶ 10      The trial court entered summary judgment against Plaintiff based on two different theories: (1) the Stipulations do not constitute an enforceable agreement as it was an "agreement to agree," so Plaintiff could not establish proximate cause of any harm by Defendants' failures obtaining the trial court's acceptance of the Stipulations; and (2) Plaintiff's claim is barred by the statute of limitations. We disagree and conclude that a genuine issue of material fact exists on both issues.

### A. Binding Agreement or "Agreement to Agree"

¶ 11      The trial court determined the Stipulations to be an "agreement to agree." As such, the Stipulations, even if properly notarized, would have had no binding effect on Plaintiff and his ex-wife. Therefore, Defendants' mistakes could not be the *proximate cause* of any harm to Plaintiff.

¶ 12      We conclude, however, that there is at least an issue of fact as to whether the Stipulations with the Asset Chart, if properly notarized, would have been a valid, enforceable agreement for the reasoning below.

¶ 13      Our Supreme Court has instructed that "[a] contract, or offer to contract,

*leaving material portions open for future agreement* is nugatory and void for indefiniteness." *Boyce v. McMahan*, 285 N.C. 730, 734, 208 S.E.2d 692, 695 (1974) (emphasis added) (citations and quotations omitted). The Court explained that:

> The reason for this rule is that there would be no way by which the court could determine what sort of a contract the negotiations would result in; no rule by which the court could ascertain what damages, if any, might follow a refusal to enter into such future contract on the arrival of the time specified. Therefore, [to be itself enforceable] a contract to enter into a future contract must specify all its material and essential terms, and leave none to be agreed upon as a result of future negotiations.

*Id.* at 734, 208 S.E.2d at 695.

¶ 14    Further, if the parties to a "preliminary" agreement "manifested an intent not to become bound until the execution of a more formal agreement or document, then such intent would be given effect[,]" even if the preliminary agreement otherwise contained all material terms. *County of Jackson v. Nichols*, 175 N.C. App. 196, 199, 623 S.E.2d 277, 279 (2005).

¶ 15    In any case, our Supreme Court also instructs that "[i]n the usual case, the question whether an agreement is complete or partial is left to inference or further proof." *Boyce*, 285 N.C. at 734, 208 S.E.2d at 695.

¶ 16    Relying on our Supreme Court's reasoning in *Boyce*, our Court has held that a contract that the parties expect to formalize is not rendered invalid simply because the parties do not subsequently execute such a formal agreement so long as the

parties "assent to the same thing in the same sense, and their minds meet as to all the [material] terms." *Smith v. Young Moving & Storage, Inc.*, 167 N.C. App. 487, 493, 606 S.E.2d 173, 177 (2004) (citation and quotation omitted); *see also Lemly v. Colvard Oil Co.*, 157 N.C. App. 99, 103, 577 S.E.2d 712, 715 (2003) (discussing requirements of (1) a meeting of the minds as to all essential terms; and (2) "sufficiently definite and certain" terms when enforcing preliminary memorandum of settlement).

¶ 17    In the present case, it could be inferred that the Stipulations and Asset Chart, in conjunction, contain all material and essential terms for a binding settlement agreement. And there is otherwise no language therein conclusively expressing an intent that the Stipulations, on their own, were *not* binding. The divorcing parties' wishes for alimony, child support, health insurance, life insurance, attorney's fees, taxes, real estate distribution, household goods and furnishings, and property distribution are all included. Thus, when comparing the Stipulations to the unsigned Settlement Agreement, it could be inferred that not one material term goes unaccounted for.

## B. Statute of Limitations

¶ 18    The trial court also relied on its conclusion that Plaintiff's claims are barred by the applicable statute of limitations. We disagree.

¶ 19    A claim for legal malpractice has a three-year statute of limitations and

accrues on the date of the last act of the defendant giving rise to the cause of action. N.C. Gen. Stat. § 1-15(c) (2009). When the statute of limitations has been pleaded as a defense by the defendant, the burden is on the plaintiffs to show that they have timely filed their claim. *Hooper v. Carr Lumber Company*, 215 N.C. 308, 311, 1 S.E.2d 818, 820 (1939).

¶ 20 The record shows that Defendants presented the Stipulations to the trial court for entry in the domestic case on 1 May 2009. Plaintiff did not commence this present suit until 14 June 2012, three years *and a month* later. Thus, under the general rule, Plaintiff would be barred by the statute of limitations.

¶ 21 There is, however, an exception to the general rule. The law, often referred to as the "latent discovery proviso," further provides that: (1) if the loss is not readily apparent at the time of its origin and (2) the loss is discovered or should reasonably be discovered by the claimant two or more years after the last act, then [3] suit must be brought within one year from the date the discovery is made. N.C. Gen. Stat. § 1-15(c). "[But] in no event shall an action be commenced more than four years from the last act of the defendant giving rise to the cause of action." *Id.* § 1-15(c).

¶ 22 Here, there is some evidence as to the first prong, that the Defendants' errors were not readily apparent to Plaintiff at the time the Stipulations were submitted to the trial court.

¶ 23 Moving to the second prong, it could be inferred from the evidence that

Defendants' defective representation was not reasonably discoverable by Plaintiff until on 13 April 2012, when Plaintiff's ex-wife moved for a dismissal in the domestic case. *See Podrebarac v. Horack, Talley, Pharr, & Lowndes, P.A.,* 231 N.C. App. 70, 75, 752 S.E.2d 661, 664 (2013) (stating that "[t]he earliest that plaintiff could reasonably have been expected to discover that defect was on 13 April 2012, when Ms. Podrebarac's attorney filed a motion to 'dismiss' his motion to enforce the 'mediated settlement agreement' "). This date (13 April 2012) occurred two years after the last act (1 May 2009).

Further, it could be inferred from the evidence that Defendants confirmed to Plaintiff, and later redoubled, that the settlement was definite regardless of the error, deterring any assumption of malpractice. *Contra Thorpe v. DeMent*, 69 N.C. App. 355, 317 S.E.2d 692 (1984) (holding that the date of discovery occurred when the defendant-lawyer informed plaintiffs of his error, which effectively destroyed their wrongful death claim, and plaintiffs dismissed lawyer shortly after).

Finally, as the third prong dictates, suit must be brought within a year of discovery. Because it could be inferred that reasonable discovery occurred on 13 April 2012, Plaintiff had until 13 April 2013 (one year later) to file. Plaintiff filed within this window, on 14 June 2012. Accordingly, it could be inferred that Plaintiff timely filed his complaint in this present action.

## IV. Conclusion

We hold that a genuine issue of material fact exists as to whether the Stipulations, if properly filed by Defendants, would have been binding. Further, it could be inferred that Plaintiff's malpractice claim is not time-barred. Accordingly, the trial court erred in granting Defendants' motion for summary judgment based on these two grounds. We, therefore, vacate the summary judgment order and remand the case for further proceedings.

VACATED AND REMANDED.

Judges CARPENTER and GORE concur.